Mississippi State Highway Commission *v.* Brooks, et al.

No. 41526      October 3, 1960      123 So. 2d 423

*Jesse W. Shanks,* Purvis, for appellant.

*William E. Andrews, Jr.,* Purvis; *Edward J. Currie* and *Edward J. Currie, Jr.,* Hattiesburg, for appellees.

KYLE, J.

This case is before us on appeal by the Mississippi State Highway Commission from a judgment rendered by the Circuit Court of Lamar County in favor of Charles A. Brooks and his wife for the sum of $5,000 as damages for the taking of a parcel of land containing 1.30 acres in eminent domain proceedings for use as a part of the right of way for interstate highway No. 59, a limited access four-lane highway, which is being constructed as a part of the Federal interstate highway system. The parcel of land sought to be condemned is a strip of land 897 feet in length off of the west side of a 27.31 acre tract of land owned by Brooks and his wife and described as a fractional part of the SE¼ of the SE¼ of Section 12, Township 4 North, Range 14

West. The strip of land sought to be condemned is 62.3 feet in width at the north end and 58.4 feet in width at the south end. There were no improvements on the 1.30 acre strip sought to be condemned, except a fence erected thereon by H. S. Ford as a boundary line fence between the Brooks land and the land owned by Ford, which lies immediately west of the Brooks land.

The case was tried in a special court of eminent domain on May 5, 1959, and the jury after hearing the testimony returned a verdict in favor of the landowners for $1,000. Judgment was entered for that amount and from that judgment Brooks and his wife prosecuted an appeal to the circuit court. The case was tried de novo in the circuit court at the July 1959 term, and a verdict was rendered in favor of the landowners for the sum of $5,000. The State Highway Commission filed a motion for a new trial, which was overruled, and from the judgment rendered in favor of the landowners for the amount last mentioned the State Highway Commission has prosecuted this appeal.

The record in the case shows that the Brooks 27-acre tract of land lies immediately west of the corporate limits of the City of Hattiesburg, and that the eastern boundary line of the 27-acre tract coincides with the county line between Forrest County and Lamar County. The land is situated about one-half mile south of State Highway No. 98, and access to said highway is provided by a gravel road running southwardly from the point where said highway crosses the county line to the northeast corner of the Brooks tract. The gravel road mentioned is referred to in the record as "South 40th Avenue." The Brooks property is situated about one mile east or southeast of Mississippi Southern College and about the same distance from the Forrest County General Hospital. The testimony of the witnesses shows that there are several dwelling houses on the land lying north of the Brooks property and south of Highway No. 98. There are no dwelling houses on the land

lying south of the Brooks property within a half mile of the Brooks property. H. S. Ford owns the land lying immediately west of the Brooks property; and the Lamar Parks Subdivision, which has been partially developed as a residential section, lies immediately west of the Ford property. The Panama Park Subdivision, which is situated within the corporate limits of the City of Hattiesburg, is about one-half mile east of the Brooks property. The Brooks land is cut over woodland or grazing land on which there is located a small amount of growing timber. Part of the land is level and part of the land is hilly, but there are no gullys. There is a seven-room dwelling house on the land, which is occupied by the Brooks family as a homestead. The dwelling house is a frame building located on the north side of the 27-acre tract and several hundred feet east of the new highway. The house is equipped with a butane gas system and is amply supplied with running water from a deep well located on the premises. Approximately 200 feet south of the dwelling house there is a three-acre pond or lake, which is supplied with water draining into it from a hollow extending back westwardly across the Brooks land and the adjoining 40-acre tract owned by H. S. Ford.

Four witnesses testified for the State Highway Commission during the trial in the circuit court.

W. K. Magee, Project Engineer of the State Highway Commission, who identified a plat of the Brooks land showing the location of the strip of land to be taken, testified that the highway right of way was to be 300 feet in width, or 150 feet on each side of the center line. The strip sought to be taken from the Brooks tract, as stated above, was approximately 60 feet in width. The remaining part of the 300-ft. right of way was to be taken off the Ford tract. Magee stated that, when the highway was completed, the highway embankment at the northwest corner of the Brooks property would be about two feet above the present ground

level; at the southwest corner there would be a cut of about two feet; and about the center of the 900-ft. strip the fill at one point would be about 17 feet high. Magee stated that the pattern of drainage of the watershed west of the highway would be changed in one respect only, namely, that there would be a 48-inch pipe line in the bottom of the hollow. There would be approximately 23 acres of the watershed west of the highway, and drainage of that area would be taken care of by the 48-inch pipe. Magee was asked on cross-examination whether after the pipe line was put there it would dump water on the property on the east side. He stated that in his opinion there would be but little difference in the amount of water which would pass through the 48-inch pipe line onto the Brooks land after the construction of the fill and the amount of water which was accustomed to pass down in its natural channel before the construction of the fill; that the flared-end headwall of the 48-inch culvert would allow the water to spread out on a concrete apron; and that the water would flow onto the Brooks land in about the same manner as it was accustomed to flow in its natural state. Magee stated that there might be some erosion down into the lake as a result of the construction, but the type of clay soil found on the Brooks land did not wash easily.

Three witnesses testified for the Highway Commission concerning the value of the Brooks property before and after the taking. J. F. Ruffin, Jr., real estate broker of Hattiesburg, with many years experience in making appraisals for the HOLC, the FHA, the VA and other money lending agencies, testified that he was familiar with the Brooks land and the 1.30 acres proposed to be taken. In his opinion the total value of the property before the taking was $21,000; after the taking, $20,000; that the difference in value before and after the taking being $900. On cross-examination Ruffin stated that he valued the residence house at $7,500, the lake at $2,000, the timber at $1,500 and the 25 acres

of land at $10,000, or $400 per acre, before the taking. He valued the 1⅓ acres of land which was to be taken at $525; he placed the damage to the timber at $100, and other resulting damage at $275.

B. J. Beard, a real estate dealer of Hattiesburg, with many years experience as an appraiser, testified that he valued the property before the taking at $19,450, and after the taking at $14,489.50. He valued 24 acres of land as woods and pasture land at $400 an acre. He did not value the land for residential purposes. He valued the one acre of land on which the residence house was located at $1,000, and the residence house at $7,-000. Beard was asked how he arrived at his valuations. He then stated that he valued the 1.30 acres of land which was to be taken at $520, and in his opinion the value of 25.7 acres remaining would be depreciated $15 an acre, or $340.50, by the construction of the limited access highway. The timber damage would be $100. He allowed for no damage to the lake, which he valued at $1250. Beard was of the opinion that the construction of the highway would effect no change in the drainage of the natural hollow leading back into the Ford property. A. H. Nall, an appraiser and full time employee of the State Highway Commission, testified that in his opinion the value of the Brooks property before the taking of the 1.30-acre strip of land was $18,600; after the taking $17,743; the estimated damage, $857. He valued the 25 acres of pasture and woodland at $400 per acre. In estimating the damages, he allowed $520 for the 1.30 acres of land which was to be taken, $100 for damages to the timber, and severance damages in the sum of $237. In his opinion the construction of the 16 and 17 ft. fill across part of the land would have a tendency to depreciate the value of the land close to the fill; but he did not think that the drainage of surface water into the lake would be affected by the construction of the highway.

G. W. Anderson, real estate broker of Hattiesburg, testified as the first witness for the defendants. Anderson appraised the Brooks property before the taking at $37,000. He valued the land at $1,000 per acre, the house at $7,500, and the pond at $2,500. He estimated the total damages as a result of the taking at $3,900, which included $1,300 for the land taken, $1,300 as damages to the pond, and $1,300 as damage caused by the depreciation in the value of the land not taken. The witness stated that the Brooks land was rolling and had enough hollow to make it desirable for a fish or stock pond, and in his opinion the land was suitable for residential development. Anderson testified that there would be a certain amount of erosion from the highway fill which was to be constructed along the west side of the Brooks property, and this in his opinion would cause soil deposits and some damage to the lake and the land lying between the highway embankment and the lake. Anderson stated that in his opinion the amount of water coming off of the Ford land and channeled into the 48-inch culvert, after the highway had been constructed, would be greater than the amount of water that had been accustomed to come to a focal point as it flowed into the natural drain which the culvert was to supplant. He thought that only about half of the water coming off of the Ford land in its natural state had been accustomed to come to a focal point at the bottom of the hollow near the edge of the Brooks property.

Charles A. Brooks testified that in his opinion the fair market value of his property before the taking was $45,000; after the taking, $39,000; the difference in value before the taking, $6,000. Brooks stated that the lot on which his residence was situated and the land on each side of the lake was flat; but from the standpoint of value there was no difference between his residence lot and the remaining 24.31 acres. He stated that about two years before the trial of the eminent domain case he had laid out eight building lots on the north side of

his property; that one of the lots was being taken in the condemnation proceeding; and that the streets running west on his plat would be dead end streets after the highway was constructed. Brooks admitted, however, that there was no roadway or other outlet from his land across the Ford property prior to the taking. O. E. Hart, Sr., the only other witness who testified for the defendants, stated that he lived in Lamar County about a mile and a half from the Brooks property. He stated that in his opinion the fair market value of the Brooks property before the taking was $51,000; after the taking, $37,535; the difference in value after the taking being $13,465. He valued the land before the taking at $1,500 per acre, the house at $7,500, the lake at $3,000. He thought that the value of the land lying within 600 or 700 feet of the highway right of way would be reduced $10,000 as a result of the construction of the highway.

The only error assigned and argued by the appellant's attorney as ground for reversal of the judgment of the lower court is, that the trial court erred in refusing to sustain the appellant's motion for a new trial on the ground that the verdict of the jury was against the great weight of the evidence, was not based on credible evidence, and was so grossly excessive as to be shocking to the enlightened conscience.

After a careful review of the testimony, however, we think that it cannot be said that the verdict of the jury is against the great weight of the evidence, or is so grossly excessive as to indicate bias or prejudice on the part of the jury.

▉▉ The rule is well settled that the present value of land sought to be condemned in eminent domain proceedings is not to be estimated simply with reference to the condition in which the owner has maintained it or for the use to which it is at the time applied, but with reference to any use to which it is reasonably adapted. The best or most valuable use to which the prop-

erty, which is taken for the public use, is adapted should be considered. 29 C.J.S., 1024, Eminent Domain, par. 160, and cases cited. ''Mere speculative uses cannot be considered. There must be some probability that the land would be used within a reasonable time for the particular use to which it is adapted. * * * There must be a present demand for the land for such purpose or a reasonable expectation of such demand in the near future.'' 29 C.J.S., 1026, 1027, Eminent Domain, par. 160. See also Mississippi State Highway Commission v. Brown, 176 Miss. 23, 168 So. 277.

The record, as we have seen, shows that the Brooks land lies immediately adjacent to the western boundary line of the City of Hattiesburg, a city of approximately 34,000 population; that the northeast corner of the Brooks property is only about 1750 feet south of the west end of Hardy Street, one of the main thoroughfares of the City of Hattiesburg; that the land is situated in an area which is clearly adaptable for residential development. The evidence also clearly indicates that the land will probably be used within a reasonable time for that particular purpose. B. J. Beard, one of the appellant's own witnesses, testified that there had been residential development across the Lamar County line during the last ten years, and that the Lamar Parks Estates Subdivision, which is situated about three-eights of a mile west of the Brooks land, had been partially developed at the time of the trial. The jury, under the facts disclosed by the testimony of the witnesses, was not required to value the land to be taken in this proceeding merely as land suitable for farming and grazing purposes. The jury had a right to take into consideration the adaptability of the land for residential use and to consider the value of the land for residential purposes.

There is also sufficient evidence in the record in our opinion to justify the jury in concluding that the construction of the highway embankment along the west

side of the 27-acre tract would affect adversely the value for residential uses of the land lying immediately adjacent to the highway, and cause some incidental damage to the lake and the land lying between the highway embankment and the lake, as a result of erosion and a probable increase in the velocity of the flow of surface water from the Ford land through the 48-inch culvert onto the level land below which was owned by Brooks. ██ █ The jury heard the testimony of the witnesses and viewed the premises, and although the amount of damages awarded may appear to be excessive, when one considers that only 1.30 acres of land has been actually taken, we cannot say that the verdict is so excessive as to be contrary to the great weight of the evidence or to indicate bias or prejudice. We find no reversible error in the record and the judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee, C.J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.