GILLESPIE, Chief Justice:
Mississippi State Highway Commission (Commission) filed a petition against Jackson County Development, Inc., (Landowner) in the County Court of Jackson County, Mississippi, condemning 9.12 acres of land for highway purposes. The jury awarded landowner $21,000 damages. Landowner appealed to the circuit court where the judgment of the county court was affirmed. Landowner appealed to this Court.
Landowner’s entire tract consists of 34 acres. In 1964 landowner filed in the chancery clerk’s office a plat subdividing the land into 114 lots and dedicating certain streets. The plat of the subdivision, known as Highland Park, was approved by the proper authorities. Shortly after the subdivision was approved in 1964, landowner bulldozed the trees and undergrowth from the streets and graded them. Nothing further was done to develop the subdivision, and when the petition was filed the streets had grown up in underbrush. Landowner sold no lots in the subdivision. The president of Jackson County Development, Inc., testified that none of the streets in the subdivision exist, and no drainage, curb and gutters, or utilities exist in the subdivision. In other words, except for the plat, the subdivision does not exist.
All of the lots in the subdivision have elevations of 7.5 to 10.3 feet above sea level. After Hurricane Camille, the board of supervisors adopted a regulation prohibiting erection of homes or buildings at an elevation of less than 12 feet above sea level. This regulation adversely affected the value of the property.
The Commission’s appraiser valued the land and estimated the damages using the before and after rule on an acreage basis. He valued the 34 acre tract before the taking at $61,500, or $1,800 per acre, and the value of the remaining property after the taking at $40,532, resulting in damages of $21,028. He considered the value of the subdivision plat and added $900 to the damages for redrawing the plat, and this amount was included in the damages of $21,028.
The evidence on behalf of landowner is discussed hereinafter.
1. Did the county court err in refusing to admit testimony offered by landowner based on lot values as if Highland Park were a fully developed subdivision ?
Except for eight lots that abut a street where the county has provided water and sewers and where other utilities are available, the court would not permit landowner’s appraisers to testify as to the values of individual lots because the appraisers valued the lots as if they were in a fully developed subdivision.
Landowner offered three appraisers, each of whom testified as to the value of all the land before the taking, the value of the remaining land after the taking, certain special items of damages, and the resulting damages to landowner. The stated question is answered by discussing the testimony of one of these witnesses.
*418 After stating his qualifications and otherwise qualifying as a witness for landowner, Bob Hardy estimated the value of the property before the taking to be $104,800, the value after the taking at $49,315, with damages of $55,485. The witness was then asked how he arrrived at these figures, and he stated that he started with what a contractor would pay for a developed lot. He testified that “my statement was that a contractor would pay $2,500 for a developed lot, and I’m using that as a landmark and working backwards. As I say, this is the reverse of a usual appraisal; this is like a feasibility report.” In other words, his study presupposed a fully developed subdivision. The court would not permit the witness to testify concerning the value of lots as if they were in a fully developed subdivision. The witness then identified, and landowner’s attorney offered in evidence, a written appraisal prepared by the witness. The court admitted it for identification only. This appraisal showed in part the following:
"DEFENDANT EXHIBIT NO. 3— IDENTIFICATION ONLY
Memo 9-29-70
Before Taking $104,800.00
8 lots (developed) @ $2,500.00. .$ 20,000.00
106 lots (undeveloped) @ $2,500.00. . 265,000.00
Total $285,000.00
Less: Development Cost @ $1700.00 ea. 180,200.00
Bal. $104,800.00
104,800 -f-106 = $989.00 per lot
Less: Interest & contingencies - $189.00 per lot
Value expectable for 114 lots - $800.00 per lot"
The trial court correctly sustained the objection to this method of valuation. It was not a developed subdivision and the filing of a plat alone does not add to the value of the land platted other than the value of the engineering services and other costs of preparing and filing a plat. Ordinarily an appraiser may explain how he arrives at values and is entitled to give his appraisal methods and theories, but witness Hardy sought to give landowner the benefit of having made an investment of $180,200 development cost. It is true that he deducted this cost from the value before taking, but the net effect is that the landowner gets the benefit of an investment he did not make. This method of appraisal is speculative and confusing and takes into account factors that do not exist. The witness could have valued the individual lots as they actually existed, or he could have valued the entire tract on an acreage basis. He was not prevented from testifying that the highest and best use of the property was for residential use. The objection sustained by the court involved the refusal to allow the witness to testify to lot values as if they were in a fully developed subdivision that would have cost, according to Bob Hardy, $180,200 to develop.
In Henry v. Miss. State Highway Commission, 231 So.2d 778 (Miss. 1970), the Court said:
The jury may consider that the land is valuable as potential residential property, or other use for which the land is adapted. The holding in Brooks [Miss. State Highway Commission v. Brooks, 239 Miss. 308, 123 So.2d 423] alludes, of course, to the present value of the land, taking into consideration its adaptability. It does not mean that the present value of the land may be determined to be of equal value as established residential property or valued on a lot footage basis, as if the undeveloped land were a residential or business subdivision. The purpose of permitting the introduction of evidence to show adaptability of land is to show why the property would sell in the present market for more than undeveloped land with no impending future development. (231 So.2d at 778-779).
2. Was the verdict against the overwhelming weight of the evidence?
 The Commission’s appraiser testified that the damages amounted to $21,-028, and the jury returned a verdict for *419 only $21,000. Landowner contends that the verdict is contrary not only to the overwhelming weight of the evidence but that there is no testimony to justify the verdict. It seems to us that the omission of the $28 was inadvertent. One of the appraisers for the landowner testified that it was customary to deal in round figures in making appraisals. We do not think that the fact the jury brought in a verdict of $28 less than the amount of damages estimated by the Commission’s appraiser is any indication that the jury was biased or prejudiced against the landowner. However, the Commission is bound by its appraiser and therefore the judgment is corrected by this Court so as to add the $28 apparently omitted from the verdict by inadvertence.
3. Did the trial court err in excluding testimony of the president of landowner as to why the property was not further developed and lots sold after learning in 1966 that Interstate No. 10 was coming through the subdivision ?
Two tentative routes for Interstate No. 10 were surveyed in 1962. In 1964 landowner purchased the property and the plat of the Highland Park subdivision was filed. Landowner’s president testified that in 1966 he learned that Interstate No. 10 would come through Highland Park. He tendered testimony that he did not further develop the subdivision because of the impending highway development. We hold that the court did not err in excluding this testimony. The question of values at the time the petition for condemnation was filed could not in any way be related to what motivated landowner regarding the development of the property in 1966.
Finding no reversible error, we are of the opinion that this case should be and it is affirmed.
Affirmed with modification of the judgment so as to read $21,028.00.
PATTERSON, INZER, SMITH and ROBERTSON, JJ., concur.