309 So.2d 867 (1975)
MISSISSIPPI STATE HIGHWAY COMMISSION
v.
R. HANCOCK and Mrs. Sarah L. Hancock.
No. 47937.
Supreme Court of Mississippi.
March 17, 1975.
*868 Campbell & Campbell, Yazoo City, for appellant.
Henry, Barbour & DeCell, Yazoo City, for appellees.
Before GILLESPIE, INZER and BROOM, JJ.
INZER, Justice.
This is an appeal by the Mississippi State Highway Commission from a judgment of a Special Court of Eminent Domain convened in the County Court of Yazoo County awarding appellees $30,000 as damages for the taking of 18.35 acres of their property. The jury awarded damages in the amount of $33,573.67, but upon motion by the commission for a new trial, the court ordered a new trial unless a remittitur of $3,573.67 was entered by the landowners. The remittitur was entered and when the commission appealed, the landowners cross appealed seeking to have the jury verdict reinstated.
Appellees Mr. and Mrs. R. Hancock are the owners of 1,359 acres of land located about a mile and a half north of Bentonia in Yazoo County. The present U.S. Highway 49 traverses this property in a north-south direction. In order to widen the highway into four lanes, it was necessary to take 18.35 acres of appellees' land. The land taken lies on both sides of the highway, with 12.89 acres on the west side and 5.46 acres on the east side. The take also included about 8,200 feet of fencing.
The commission offered two qualified appraisers who testified relative to the value of the property taken. John Turner testified that in his opinion the fair market value of the entire tract of property immediately before the taking was $407,700 and the fair market value of the remaining property after the taking was $396,050, making a total damage to the landowners in the amount of $11,650. He valued the entire tract at $300 per acre, with its highest and best use for farm and pasture land. He valued the 18.35 acres at $5,500 and placed a value on the 8,200 feet of fencing at $6,150 based on an opinion that the fence would cost 75 cents per linear foot to reproduce. On cross examination, the appellees showed that this witness was unfamiliar with some of the recent sales of residential lots in this particular area.
Robert Bond testified that he based his appraisal of the property on his opinion that the highest and best use of the whole tract was farm land. He valued the property at $350 per acre with a total valuation of $475,650, immediately before the taking and a valuation of $464,635 immediately after the taking with a damage to the landowners of $11,285.
On cross examination this witness was asked as to his knowledge whether there was any demand for residential lots in this area. He admitted that he had not talked with any real estate agents in the area to determine if there was any demand for residential lots. He was also questioned concerning the possibility that there was a *869 water supply available to the property by means of a rural water line. He was unaware of any such water line and was of the opinion that none existed. It was subsequently proven that the subject property was served by a rural water system.
Mr. Robert Hancock, one of the landowners, testified that he was familiar with the value of real estate in the area and that in his opinion, the property along both sides of the highway had the highest and best use for residential property. In his opinion there was approximately 280 acres that was readily adaptable to this use. He testified that he had received many requests to sell lots along each side of the highway. He placed a value of $1,250 per acre on the land taken based upon his opinion that the highest and best use was for residential purposes. He stated that he was familiar with other sales in the area for building sites and that it was his intention to subdivide some of his land and to sell it as residential lots, particularly in the area where there was a large lake. He estimated that it would cost $1.50 per linear foot to replace the fence that was taken. In his opinion the fair market value of the entire tract immediately before the taking was $679,500 and immediately after the taking was $639,262.50, with a resulting damage for the taking of $40,237.50.
Ted Russell, a real estate broker with many years of experience and a qualified appraiser, testified on behalf of the landowners that in his opinion there were 241 acres of the property that had a highest and best use as rural residential with the remainder having a highest and best use as farm property. He placed a fair market value on the entire tract immediately before the taking of $684,174 and immediately after the taking of $650,301.50 for a total damage of $33,872.50. Included in this before and after valuation was the property along the highway, which he valued as residential property at $1,250 per acre and the fencing taken valued at $1.35 per linear foot.
Mr. J.P. Sartain, a real estate broker with many years experience and a qualified appraiser, testified that in his opinion the fair market value of the entire tract immediately before the taking was $654,361 and that the value of the remaining property immediately after the taking was $621,347, for a difference of $33,014, as total damages due the landowner as a result of the taking. He also was of the opinion that all the property taken along both sides of the highway was suitable and adaptable as rural residential.
Both appraisers testified as to the adaptability of the land along the highway for residential purposes and also testified as to the demand for rural residential property in that area.
Mr. William Cox, who resides in the area, testified that although he was not in the real estate business he was familiar with the land sales in the area. This witness testified that there was a great and continuing demand for residential lots in the area and that he had recently sold some of his property for residential lots. It was his estimate that 100 acres of the landowners' property could easily be sold for residential purposes in the immediate future, particularly along both sides of the highway.
It is apparent that the variance in the values placed by the appraisers for the highway department and those by the landowners grows out of the difference of opinion as to the highest and best use of the property in question and a difference of opinion as to the value of the fencing actually taken.
Appellant contends that there is no substantial testimony of probative value to support the verdict of the jury. Therefore, the trial court should have granted a new trial without giving the landowners the option of a remittitur, or should have required a much larger remittitur. The position of appellant is stated in its brief as follows:
The basic position of appellant in this case is that there is no testimony of substantial, probative value to support the *870 verdict, and that therefore, the case should be reversed and remanded for a new trial in the lower Court. The testimony of the appellees' witnesses, which was evidently adopted by the jury, was not based on comparable sales, but was grounded in at least two erroneous assumptions: one, that the county-wide market demand for "rural residential" property would concentrate on the land of appellees and, two, that such residential use for appellees' frontage, as was warranted by actual demand, would not shift to appellees' remaining land.
The testimony of the appraisers for the landowners was competent and relevant and it was for the jury to pass upon the credibility and weight of their testimony. There was ample testimony to support the conclusion that there was substantial demand in the area of the subject property for rural residential lots. It is also clear that the subject property is adaptable to this use since it is reasonably level. There was also testimony that there is a reasonable probability that the property will be devoted to residential use within the foreseeable time. Thus, the market value of the property has been enhanced by the fact that it is so adaptable. Appellant apparently concedes that this was a jury issue since it states in its brief the following:
However, much we may disagree with appellees as to the amount of demand for residential use present in the area of this highway acquisition, it seems evident from the verdict that the jury adopted the premise that the land taken had a highest and best use as residential. This would ordinarily resolve the question since this determination is within the province of the jury. But there is in this instance a basic misconception or fallacy in the evidence for the appellees which so misleads and decoys as to destroy the probative value of appellees' evidence and thereby leaves the jury verdict unsupported by any substantial evidence.
The real basis of appellant's appeal is stated in the conclusion to its brief as follows:
This is a case in which there is a partial taking from a larger parent tract which is virtually uniform in physical characteristics. The confusion in this case has been created by the defendants' witnesses' attempts to divide the property into two highest and best uses with the only division between the two being determined by the market demand for residential property. This confusion could be avoided and this type of case could be correctly decided by merely following the before and after valuation rule that this Court has always applied. No exotic or unusual rule or remedy need be concocted for this kind of case. If for any reason the market demand for residential use cannot be extended to the remaining property of the defendant or landowner, then the before and after rule will adequately compensate him for the loss of property at its highest and best use of residential. But, if as in this case, there remains ample property which is just as adaptable and available for use at the highest level, then the before and after valuation rule will shift the higher value use to the remaining lands of the defendant and the reduction in acreage will fall upon the lower valued lands.
Expressed another way, the defendant will still be able to apply as many acres of his land to a residential subdivision after the take as he would have been before the take. The defendant thus has undergone a reduction in the balance of his acreage which is applied to agricultural or farm use and should be valued accordingly.
Apparently, the appellant is actually contending the testimony of the witnesses for the landowners has no probative value because they failed to take into consideration the fact that following the widening of the highway, the landowners have other land *871 that is now classified as farm land, which can afterwards be substituted for the residential property taken. Thus, the landowners will still have as much residential property as they had before the taking. Consequently, the appellant argues that the appraisers could only value the land taken as farm land. We find no merit in this contention. In State Highway Commission v. Chatham, 173 Miss. 427, 161 So. 674 (1935), it is said:
It often happens that a residence property, as in the case before us, is substantially hurt in value by the location of a railroad or a hard-surfaced public road adjacent to the property. It more often happens that the value of property adjacent to such a public highway is enhanced thereby. But the rule in this state is familiar to all that when a part of the property so enhanced in value is to be taken for the public improvement, no deduction is to be made out of the value of the part taken on account of the enhancement to the value of the remainder not taken.
(173 Miss. at 433, 161 So. at 675).
The rule in this state is that when a part of a larger tract of land is taken for public use, the owners should be awarded the difference between the fair market value of the whole tract immediately before the taking and the fair market value of the remaining property immediately after the taking, without considering the general benefits or injuries to the use of the taken land. This rule leaves no room for a deduction for any enhancement of the remaining land due to the nature of the facility to be built on the land taken. Furthermore, the landowner is entitled to due compensation not only for the value of the property actually taken, but also for the damages, if any, which may result to the landowner as a consequence of the taking without any deduction therefrom on account of any supposed benefits incident to public use for which the application is made. Pearl River Water Supply District v. Wood, 252 Miss. 580, 172 So.2d 196 (1965) and Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565 (1940).
Although approaching it in a novel manner, what appellant is contending amounts to nothing more than a contention that the widening of the highway will enhance the value of other land not taken and consequently, it is entitled to a set off of the value of the enhancement from the value of the land taken. While this is the rule in some jurisdictions, it is not the rule in this state. Consequently, this case must be affirmed on direct appeal.
On cross appeal, the landowners urged that the trial court was in error in ordering the remittitur and that they are entitled to have the jury verdict reinstated.
The rule in this state is that the action of the trial court upon a motion for a new trial is to be favorably considered upon appeal and supported unless manifest error appears or unless its action in sustaining the motion manifests an abuse of discretion. This rule is particularly applicable, where, as here, a new trial has been granted, since in such cases the rights of parties are not finally settled as they are where a new trial is refused.
While this case presents an extremely close question, we are of the opinion that although the trial court did not specifically so state, it can be implied that the court was of the opinion that the verdict of the jury was against the overwhelming weight of credible evidence. Under all the circumstances of this case, we cannot say that there was manifest error or the trial court abused its discretion in ordering a new trial. Consequently, this case will be affirmed on cross appeal and remanded for a new trial, unless the cross appellants shall within ten days after the judgment of this Court becomes final enter the remittitur suggested by the trial court in the amount of $3,573.67. In the event the remittitur is entered, judgment will be *872 entered here for the landowners in the sum of $30,000.
For the reasons stated the case is affirmed on direct appeal and affirmed on cross appeal and remanded for a new trial unless the specified remittitur is entered.
Affirmed on direct and cross appeals and remanded unless remittitur is entered.
RODGERS, P.J., and PATTERSON, SMITH, ROBERTSON, SUGG and WALKER, JJ., concur.