IN THE SUPREME COURT OF MISSISSIPPI

NO. 94-CA-00525-SCT

*PRISCILLA OUGHTON*

*v.*

*MICHAEL S. GADDIS, THOMAS B. GADDIS, RICHARD SCOTT GADDIS AND EDWIN M. GADDIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/94 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STANLEY T. INGRAM |
| ATTORNEYS FOR APPELLEES: | JOE CLAY HAMILTON |
| | DEANNE M. MOSLEY |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | REVERSED AND REMANDED - 11/7/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/2/96 |

**BEFORE SULLIVAN, P.J., ROBERTS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Michael S. Gaddis, Thomas B. Gaddis, Richard S. Gaddis, and Edwin M. Gaddis, [hereinafter Gaddis brothers], owned a parcel of landlocked property fronting the Chunky River in Lauderdale County. The Gaddis brothers were granted an easement by the county board of supervisors for ingress/egress over land owned by Priscilla Oughton, [hereinafter Oughton].

¶2. Oughton sought relief from the supervisor's decision from the Circuit Court of Lauderdale County. The lower court awarded damages to Oughton by computing the amount of land taken by the dollar value of the best current use of the entire tract. Oughton argues that the lower court was incorrect in its computation. Oughton claims that the lower court improperly utilized a general per acre value based upon a best use as agricultural for the entire tract of land, whereas the value of the portion of land actually "taken" was much higher than the remainder of the property, because the "taken"property was riverfront property which had a highest and best use as recreational property.

¶3. Oughton also contends that her expert witness should have been allowed to testify as to the value of the taken property relative to the other potential uses of the land. Finally, she contends that the lower court should have awarded damages to cover her cost of erecting a fence on either side of the

easement.

¶4. The Gaddis brothers rebut by arguing that the proper evidentiary predicate was not laid to allow testimony concerning the land's value if it was developed, and that Oughton failed to show that a fence was necessary.

¶5. We conclude that the trial court erred is disallowing Oughton's expert testimony and that the lower court's computation of value, utilizing only a general per acreage value of the entire tract of land based upon only a single use was incorrect. Property may have several uses as was clearly indicated by the excluded testimony of Cook, Oughton's expert witness.

¶6. The lower court also erred in holding that there was no showing by Oughton that a fence, located on either side of the easement was necessary. The lower court failed to factor into consideration the fact that the vast majority of Oughton's property is best suited for agriculture, that cattle were pastured thereon until 1991, and that cattle could be pastured on the property again. Nor was consideration given to the fact that once the easement was constructed a fence was necessary to keep people out of Oughton's property. We therefore must reverse on both issues.

## ISSUES

**I. WHETHER THE LOWER COURT ERRED IN EXCLUDING THE LANDOWNER'S EVIDENCE REGARDING THE DIFFERENT PER ACREAGE VALUES OF DIFFERENT PARTS OF THE SUBJECT PROPERTY?**

**II. WHETHER THE LOWER COURT ERRED IN REFUSING TO AWARD THE LANDOWNER THE COSTS OF BUILDING A FENCE ON BOTH SIDES OF THE EASEMENT?**

## STATEMENT OF FACTS

¶7. In April 1991, the Gaddis brothers bought a piece of land which borders the Chunky River in Lauderdale County, Mississippi. The Gaddis property is shaped like a triangle and consists of 18 acres. On two sides of the Gaddis property is land owned by Priscilla Oughton. The third side is the Chunky River. In other words, the Gaddis property is legally and factually landlocked, and unless a bridge is constructed over the Chunky River, the Gaddis brothers have no access to their property.

¶8. The Gaddis brothers paid $15,000 for their property. The intended use of that property was recreational: hunting, fishing and camping. They eventually erected a small camp site and cleared an area to place a boat in the River. The remainder of the Gaddis property is used for timber. The Oughton property, likewise, has been used for various uses: farming, timberland, camping, and recreation.

¶9. The Gaddis brothers eventually petitioned the county board of supervisors to grant an easement on the Oughton property to allow them ingress/egress onto their property. The record indicates that Oughton may not have received proper notice to come to the hearing on this matter. However, in the case before us, the lack of notice issue is not pressed by either party. At the hearing, the county board of supervisors granted the easement. When Oughton learned of the decision, she petitioned the lower

court for relief.

¶10. A bench trial was held on May 12, 1994. In the lower court, both sides brought expert witnesses on the value of the land. Alex Smith, a real estate appraiser, testified for the Gaddis brothers that the highest and best use of the Oughton property was for agriculture and timber production. Smith arrived at the figure of $450 per acre for the Oughton property by comparing the other agricultural and timberland properties in that area. Under Smith's analysis, the Oughton property contained 518 acres, which at $450 per acre, resulted in a total value of $233,100. Thus, since the easement was 1.2 acres total, he multiplied $450 against 1.2 acres, and subtracted this amount from the original total value. However, on cross-examination, Smith admitted that the Gaddis Brothers had paid an average of $800 an acre, which somehow, he felt was not comparable to the situation at hand.

¶11. Oughton offered proof from Edsel Cook, a real estate appraiser who testified that although Oughton's land was best used for agricultural and timber purposes, part of the land bordering the River, had a higher value and was best used for recreation. The Gaddis brothers' attorney objected to this testimony, and the judge sustained the objection stating that "[t]here can only be one highest and best use of the entire tract." Later, when considering the issue of the fence costs, the judge again reiterated this sentiment:

> My understanding of the law that exists in this state is that only one highest and best use can be established for a particular parcel of property. It cannot be subdivided or split up and different parcels of the property assigned different highest and best uses. The whole parcel must be established to have one highest and best use.

¶12. Cook had attempted to testify that the Oughton riverfront property had a market value of $2,000 per acre, a figure arrived at by looking at the comparable sale of the Gaddis property, which was similar in size and location to the riverfront property. Cook stated that the riverfront property of Oughton's lot, containing 11.8 acres, would be damaged by the establishment of an easement because the proposed easement would run too close to the River and would cut down the size of any riverside lots that Oughton could sell for use as camping, fishing, or hunting grounds. Therefore, since the riverfront property with the proposed easement would no longer be suitable for recreational use, the land would only be suitable for timberland or agricultural use, with a value of $450 per acre. Thus, Cook calculated the damages to the property after the establishment of the easement at $1,550 an acre (which is the same as $2,000 minus $450), or approximately, $18,000 in total. Cook concurred with Smith in that the other parts of the Oughton property, not bordering the Chunky River, had a highest and best use for agriculture or timberland, and also valued these acres at $450 per acre. Since the lower court would not allow Cook to testify as to the highest use for the riverfront property apart from the rest of the property, Cook's testimony was reduced to a parroting of Smith's assessment.

¶13. In regards to the fence, Bobby Shelton, caretaker of the Oughton land, testified that a fence was necessary to keep people from going onto the land. The lower court found that as the highest and best use was agricultural and timber production, and since the land did not hold any cows at the present moment, a fence was not a necessity. The cost of the fence was $5,600 and the lower court refused to award the cost as damages to Oughton.

## DISCUSSION OF LAW

## I. WHETHER THE LOWER COURT ERRED IN EXCLUDING THE LANDOWNER'S EVIDENCE REGARDING THE DIFFERENT PER ACREAGE VALUES OF DIFFERENT PARTS OF THE SUBJECT PROPERTY?

¶14. Even though the State may be acting in a way so as to benefit only one landlocked property owner by granting him a private right of way, the State is still exercising its power of eminent domain in such matters. *Quinn v. Holley*, 244 Miss. 808, 146 So. 2d 357 (1962). When the State exercises its power of eminent domain, the damage award that the beneficiary must pay to duly compensate the victim of the taking includes the fair market value of the land actually taken for the private easement, and also all damages to the remaining land not included in the taking. *Broadhead v. Terpening*, 611 So. 2d 949, 955 (Miss. 1992); *Trustees of Wade Baptist Church v. Mississippi State Highway Comm'n*, 469 So. 2d 1241 (Miss. 1985) (condemnor is under a heavy and nondelegable duty and responsibility to pay landowner full fair market value of taken property). Thus, the general formula reflecting this principle is to calculate the difference between the fair market value of the entire tract before the taking, and the fair market value of the entire property immediately after the taking. *Potters II v. State Highway Comm'n of Mississippi*, 608 So. 2d 1227 (Miss. 1992); *Mississippi State Highway Comm'n v. Hillman*, 189 Miss. 850, 198 So. 565 (1940) (calling the subtraction formula the "before-after" rule). The rationale behind this rule is to account for the damage to the property remaining after the taking, as well as the value of the land included in the taking. *Mississippi State Highway Comm'n v. Franklin County Timber Co.*, 488 So. 2d 782 (Miss. 1986).

> When any person shall desire to have a private road laid out through the land of another, when necessary for ingress and egress, he shall apply by petition, stating the facts and reasons, to the board of supervisors of the county, which shall, the owner of the land being notified at least five days before, determine the reasonableness of the application. If the petition be granted, the same proceedings shall be had thereon as in the case of a public road; but the damages assessed shall be paid by the person applying for the private road, and he shall pay all the costs and expenses incurred in the proceedings.

Miss. Code Ann. § 65-7-201 (1972). The value of land condemned is the fair market value others would pay for the entire land without the easement or right-of-way outlets across other lands. *Pearl River Valley Water Supply Dist. v. Brown*, 254 Miss 685, 182 So. 2d 384 (1966). In order to make the fair market value assessment, "all the facts as to the condition of the property and its surroundings, its improvements and capabilities, may be shown and considered in estimating its value." *Hillman*, 189 Miss. at 850, 870, 198 So. at 571. The lower court is not limited to just the property's highest and best use for the moment, but may consider the value of the property with reference to any use for which the property is reasonably adaptable. *Potters II*, 608 So. 2d at 1227 (within commercial properties, there are many uses of differing values); *Daniels v. Board of Supervisors of Clarke County*, 323 So. 2d 748, 749 (Miss. 1975); *Mississippi State Highway Comm'n v. Hancock*, 309 So. 2d 867 (Miss. 1975) (part of condemned land had residential purposes as highest and best use, and other part as farmland, with differing values depending on the purpose); *State Highway Comm'n v. Brown,* 176 Miss. 23, 33, 168 So. 277, 299 (1936) (property may have several available uses and purposes, and consideration must be given to the fair market value of each use and purpose).

¶15. Closest on point to the case at bar are *Mississippi State Highway Comm'n v. Brooks*, 239

Miss. 308, 123 So. 2d 423 (1960), and **Mississippi State Highway Comm'n v. Hancock**, 309 So. 2d 867 (Miss. 1975). In **Brooks**, the land involved in the eminent domain proceeding had previously been used for farming and cattle raising. However, several adjacent properties surrounding the Brooks tract had recently been developed for residential uses. Thus, the landowner's expert witness was allowed to testify that the property had as a highest and best use residential development. This Court affirmed the lower court's damages award to the landowner as it was deemed that the land was adaptable to residential purposes. **Brooks**, 123 So. 2d at 317, 427. In **Hancock**, the expert made a proffer that the value of the land fluctuated as the use and purpose changed, and that when the best use for the condemned land was rural residential, the price was a higher cost per acreage than when the best use was agriculture. **Hancock**, 309 So. 2d at 869. There, the State contended that there could be only one highest and best use of the property, that being farming since widening the highway would still have left the same amount of land bordering the highway to use as rural residential property. This Court rejected that argument and approved of the property owner's expert's testimony that the subject property was adaptable to two uses. *Id.* at 870.

*¶16.* Recently, this Court made a similar pronouncement in **Dennis v. City Council of Greenville,** 646 So. 2d 1290 (Miss. 1994). There, this Court found the lower court erroneously excluded landowners' evidence relating to comparable sales of property supporting appraised value based upon the use of the property in the manner for which it had been zoned while admitting the city's evidence of appraisal based on the use of the property in a manner inconsistent with its present zoning. In reflecting upon the lower court's error, we noted that "[i]n seeking value, we assume that our rational, wealth-maximizing buyer and seller will inform themselves of various uses of the property and will trade by reference to the most profitable use." **Dennis** 646 So. 2d 1293, (citing **Potters II**, 608 So. 2d at 1232-33). In other words, the majority recognized that a property can have "various uses."

¶17. Here, the lower court held that the Oughton property could be used for one purpose only-- either agriculture or recreational, and that the uses could not be subdivided. The judge cited no authority for this proposition, nor do the Gaddis brothers in their brief. Mississippi law on this issue is at best scarce. If anything, the law seems to imply that whatever purposes to which the land is adaptable are admissible as its highest and best uses. *See* **Brooks, Brown; Daniels; Potters II; Hancock; Dennis.** There is no longer a basis for the lower court's conclusion that a piece of property may be suitable for two purposes- agriculture and timber, but not three - agriculture, timber and recreation. Here, the record indicates that the Gaddis brothers were certainly using their property for recreational purposes. Because the record also indicates that the Oughton property was not much different than the Gaddis property, it is clear that certain portions of the condemned property were clearly adaptable to recreational uses, as well. Moreover, the very fact that the Gaddis brothers paid over $800 an acre for comparable land clearly indicates that the value of their land is different in different areas. Because all parties agreed that the properties which were used for agriculture are not worth more than $450 an acre, it would stand to reason that the Gaddis brothers' average acreage price for their property was almost twice this average, in order to incorporate the costs of the riverfront property also contained in their plot.

> When the highest and best use of the property is not uniform throughout the tract in question, an appraiser may testify to the highest and best use for the different portions of the full tract involved. This rule makes sense in light of the purpose of the "just compensation" provision in

the constitutions . . . .

Here, the State seeks to take a portion of the full tract that includes a larger percentage of buildable, nonwetland property than does the tract as a whole. Consequently, the application here of the State's proposed rule, that an appraiser must offer only one valuation considering the total value of the entire parcel, would misrepresent the value of the specific land portion to be taken.

***Dep't of Transp. v. HP/Meachum Land Ltd. Partnership***, 614 N.E.2d 485, 488 (Ill. App. Ct. 1993) (citations omitted). "[G]enerally the market value of the particular part of a tract expropriated is determined by the actual market value of the portion taken, and not by its average per-acre or square-foot value as a pro rata portion of the parent tract." ***State Through Dept of Highways v. LeDoux***, 184 So. 2d 604, 610 (La.Ct. App. 1966).

¶18. This Court holds that the lower court was in error for excluding Cook's testimony that the Oughton land where the easement was being laid, was in a more valuable region than the agricultural land which was the dominant part of the property. In the lower court, the Gaddis brothers' attorney objected to Cook's evaluation on the basis that proper foundation was not laid for Cook's estimate that the riverfront property was valued at $2,000. Cook responded that he arrived at this figure by determining the amount paid for the property by the Gaddis brothers. This amount averaged over $800 an acre, thus, indicating the combination of a higher priced riverfront tract coupled with a lower priced agriculture tract. At that point, the lower court judge did not state whether this foundation was improper or insufficient. Rather, he merely went on to state that he did not think the law would allow for more than one highest and best use for the property. In fact, we hold the foundation laid was sufficient.

¶19. Having found that a proper foundation was laid for introducing such a figure for the riverfront property, Cook's excluded testimony should have been allowed. We further hold that the lower court's interpretation of the law was incorrect. *See* ***Pearl River Valley Water Supply Dist. v. Brown***, 254 Miss. 685,182 So. 2d 384 (1966) (evidence admissible when highest and best use is not speculative). It is completely plausible that a piece of property, especially one as large as the Oughton property, can have several highest and best uses, and that its value should not be calculated based upon the value of the dominant use. Our case law does not require that property have a constant per acreage value based upon a single best use. Thus, based on both Mississippi case law, as well as the case law of other jurisdictions touching upon this issue, we find the lower court to be in error. Cook's testimony valuing the riverfront property at $2,000 per acre was proper and accurate, especially considering the fact that the Gaddis brothers practically identical adjacent property, also used for hunting, camping and recreation, had been purchased at a similar price per acre. The similarities and use of the riverfront properties by the Gaddis brothers and Oughton makes Cook's excluded testimony not only relevant and admissible, but also accurate and very compelling. Oughton's claims are of merit, thus reversal is required.

## II. WHETHER THE LOWER COURT ERRED IN REFUSING TO AWARD THE LANDOWNER THE COSTS OF BUILDING A FENCE ON BOTH SIDES OF THE EASEMENT?

¶20. Oughton ceased using her property for raising cattle in 1991. Thus, the lower court, while

admitting that the only possible highest or best use for the property was agriculture or timberland, denied the costs of a fence because no cattle were present on the Oughton property.

¶21. "The cost of fencing . . . should be taken into consideration in awarding compensation, but only where such fencing . . . is necessary." 29A C.J.S. *Eminent Domain* § 152(b) (1992). In **Sullivan v. Board of Supervisors of Lafayette County**, 58 Miss. 790 (Miss. 1881), this Court affirmed the lower court's decision to require the State to pay for a fence to be erected on both sides of an easement. The costs of building a fence is a factor to be considered in determining the market value of the land. **Hillman**, 189 Miss. at 871, 198 So. at 571 (1940). If keeping cattle within properties is the concern behind the fence, the necessity of building a fence cannot be "too remote." **Schlit v. Clark**, 114 Miss. 354, 362-63, 75 So. 130, 131 (1917).

¶22. On its face, the circuit court's decision might appear to be correct, as the fence is not a current necessity to keep in cattle. However, considering the testimony that the Oughton property has been used for raising cattle in the near past, and the lower court itself acknowledged that agriculture would be a highest and best use, it is not "too remote" that the land will once again be used for cattle raising. Once the roadway easement is constructed, if Oughton decided to graze cattle on her property again, a fence to keep cattle out of the roadway would clearly constitute a necessity as Oughton would no longer be able to rely upon the river to deter cattle much like a fence. The lower court on remand should consider this factor.

¶23. Additionally, there appears to be another factor which must be considered by the trial court. The testimony of Bobby Shelton indicated that after the easement is established there will not be sufficient remaining land for Oughton to develop riverfront lots for use as hunting, camping, or recreation. Oughton's proof also showed the need to keep people out of her property along the newly constructed easement. Considering this Court's opinion in **Sullivan** where the State was required to pay for the erection of a fence on both sides of the highway scheduled to be constructed, the need for a fence in the case *sub judice* is not speculative, and in fact, seems to be a necessity. Thus, as the lower court did not even "factor" in the necessity for a fence, apparently ignoring this proof, this issue is also remanded for a new trial.

## CONCLUSION

¶24. The lower court erred on the issue of the land use and in excluding Cook's testimony. Real property can have more than one highest and best use, as was clearly the case here. Because land itself is not always uniform, so can its uses may vary depending upon differences within the property. In order to effect, full compensation, all of the highest and best uses of a property must be taken into account when calculating damages. The lower court erred in failing to consider the proof of the necessity of the fence both for keeping cattle in and people out. The necessity of a fence must be taken into account as a factor in calculating damages, thus, this issue is remanded to the trial court. This case is reversed and remanded to the lower court for further proceedings consistent with this opinion.

**¶25. REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS**

**AND MILLS, JJ., CONCUR.**