# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CA-00501-SCT

*CHARLES F. CLARK AND*

*MISSISSIPPI LAMINATORS, INC.*

*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/25/1998 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEY FOR APPELLANTS: | HENRY PALMER |
| ATTORNEY FOR APPELLEE: | WILLIAM E. READY, JR. |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | REVERSED AND REMANDED - 04/20/2000 |
| MOTION FOR REHEARING FILED: | 5/22/2000; denied 7/27/2000 |
| MANDATE ISSUED: | 8/3/2000 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE AND FACTS

¶1. This is an appeal of an eminent domain case by a landowner from a judgment of the Special Court of Eminent Domain of Clarke County granting a directed verdict and awarding the landowner $27,150 as just compensation for the taking of 12.41 acres of his property. The landowner argues that the trial court erred in excluding his testimony and that of his expert appraiser as to the highest and best use, as well as to the valuation of the subject property. Finding reversible error in the proceedings below, this Court reverses the judgment below and remands for a new trial.

¶2. At the time of the taking, appellant Charles F. Clark was the owner of Mississippi Laminators, Inc., a sawmill and manufacturing operation which produces laminated wood beams used in commercial and residential applications. The company owned 116.31 contiguous acres of land in Clarke County,

Mississippi, part of which bordered the town of Shubuta. Clark assembled the property through twelve purchases over the course of several years. Although Mississippi Laminators had some operations on the 116.31 acres, the company had been operating primarily from its Quitman, Mississippi, facility since 1966.

¶3. The property will be referred to as a north parcel consisting of 61.31 acres and a southwest parcel consisting of 55 acres. A reduced copy of trial exhibit #2 depicting the layout of the property is set out as Exhibit "A" to this opinion. At the time of the taking, the north parcel had some improvements upon it such as an edge sorter, wood stacker, chip loader, office, etc., and was being put to some degree of industrial use by Mississippi Laminators. The 55 acre southwest parcel was joined to the north parcel by a strip of land 200 feet wide. The southwest parcel was unimproved and was covered almost entirely with timber and brush with no involvement in the manufacturing operation.

¶4. On August 30, 1995, the Mississippi Transportation Commission ("Commission") filed a complaint for eminent domain against Clark's property, seeking to acquire 12.41 acres in connection with the U.S. Highway 45 Shubuta Bypass Project. The planned construction of this highway is all in the northern parcel but would run west of any present improvements on the property. As the planned 4-lane highway has limited access, it will sever the 55 acre southwest parcel from the remainder.

¶5. On September 12, 1997, Clark filed an amended statement of values claiming that the fair market value of the property to be condemned was $27,922.00, and damage to the remainder was $1,644,561.10, for total compensation due of $1,672,483.10. The elements of damage were said to be severance and that the highest and best use of the land was industrial before the taking and timber land for the west side after the taking. On February 3, 1998, the Commission filed an amended statement of values in which it claimed the fair market value of the property was $24,600, and the damage to the remainder was $2,550, for total compensation due of $27,150. The elements of damage were said to be severance and the highest and best use was industrial and interim timber production use.

¶6. Trial commenced on February 23, 1998.[1] After finding Clark's proffered testimony and the proffered testimony of his expert appraiser as to the highest and best use and value of the property to be without sufficient legal basis, the court, on February 25, 1998, granted the Commission's motion for a directed verdict and awarded Clark $27,150 in just compensation. On March 5, 1998, Clark filed a motion for new trial which was denied on March 9, 1998. Clark, feeling aggrieved, appeals to this Court.

## DISCUSSION OF LAW

**I. WHETHER THE TRIAL COURT ERRED IN EXCLUDING CLARK'S APPRAISAL EXPERT'S PROFFERED TESTIMONY AS TO THE HIGHEST AND BEST USE AND VALUE OF THE SUBJECT PROPERTY.**

**II. WHETHER THE TRIAL COURT ERRED IN EXCLUDING CLARK'S PROFFERED TESTIMONY AS THE TO HIGHEST AND BEST USE AND VALUE OF THE SUBJECT PROPERTY.**

¶7. As his first and second assignments of error, Clark argues that the trial judge erroneously excluded his proffered testimony and the proffered testimony of his expert appraiser, Joe Barnett, as to the highest and best use and value of the property on the grounds that Barnett and Clark's opinions had no sufficient basis in law.

¶8. The admission of testimony is within the discretion of the trial court and will be reversed only where there is an abuse of that discretion. *Mississippi Transp. Comm'n v. Fires*, 693 So. 2d 917, 920 (Miss. 1997). Where a court has not applied the correct legal standard for the admission of evidence, the deference customarily afforded the lower court will be precluded because the error has become one of law. *Id.* at 920.

¶9. Land sought to be condemned should be appraised with reference to any use to which it is reasonably adapted, and therefore, the best or most valuable use to which the property could reasonably be expected to be adapted is the use which should be considered, regardless of the current use of the property. *Mississippi State Hwy. Comm'n v. Brooks*, 239 Miss. 308, 316-17, 123 So. 2d 423, 427 (1960).

¶10. To warrant admission of testimony as to the value for purposes other than that which the land is being put, or to which use is limited by ordinance at the time of the taking, the owner must first show that: (1) the property is adaptable to the other use; (2) it is reasonably probable that the property will be put to the other use within the immediate future, or within a reasonable time; and (3) the market value of the land has been enhanced by the other use for which it is adaptable. *Mississippi State Hwy. Comm'n v. Rogers*, 256 Miss. 808, 112 So. 2d 250 (1959). In *Mississippi State Hwy. Comm'n v. Wagley*, 231 So. 2d 507, 508 (Miss. 1970), this Court stated:

> [m]ere speculative uses cannot be considered. There must be some probability that the land would be used within a reasonable time for the particular use to which it is adapted . . . . There must be a present demand for the land for such purpose or a reasonable expectation of such demand in the near future.

¶11. This Court has pointed out that the jury is not allowed to consider a special purpose for which a particular owner expects to use the land in determining the fair market value. *Green Acres Memorial Park, Inc. v. Mississippi State Hwy. Comm'n*, 246 Miss. 855, 866, 153 So. 2d 286, 291 (1963).

### A. Expert Appraiser's Testimony

¶12. All parties agreed that the 61.31 acres comprising the north parcel, including the 12.41 acres of the take area, have a highest and best use as industrial. However, the highest and best use of the 55 acres in the southwest corner of the property was hotly contested. Barnett opined the highest and best use of the entire 116.31 acres, including the 55 acres, was industrial, that 55 acres was adaptable to be used as "assemblage property" in support of Clark's manufacturing operation, and that such use would be lost by the severance, thereby lowering the highest and best use of the southwest parcel to timber land.

¶13. At trial, as well as in the briefs to this Court, the Commission contends that Barnett did not lay the proper predicate for testifying that the highest and best use of the 55 acres was industrial. Barnett admitted that he knew, prior to the taking, that Clark intended to move the Leakesville facility to the 116.3 acres in Clarke County, which plan would subject the 55 acres to industrial use. He also testified that he used this knowledge as a factor in making his determination of what the highest and best use of the 55 acres would be.

¶14. Prevailing authority holds that the owner's mere plans or hopes for the future are completely irrelevant in establishing the highest and best use of the land. *See* Julius L. Sackman, *Nichols on Eminent Domain* § 12B.12 (3d ed. 1999). However, where the specific plans of the landowner have moved from the realm

of the purely hypothetical and have attained some degree of concrete realization, we think future development is relevant and admissible to show a basis for one's opinion as to the highest and best use of the land. *See id.* As Clark's intention to move his Leakesville wood products operation to the property in Shubuta, with planned use of the 55 acres, was more than mere speculation, it was proper for Barnett to consider the planned move in arriving at his opinion as to the highest and best use of that land.

¶15. At the time of the taking, as Barnett was aware, Clark had already obtained an SBA loan to relocate the Leakesville operation to the larger Shubuta property so that Clark could accommodate the planned expansion of his business. Barnett testified, "[Clark's] laminating operation had been in existence for a number of years, but we had heard of an addition that he was going to make to that plant and that at the present time, he didn't feel . . . that he had all that he needed in the area where he was to accommodate that." Not only had Clark secured funds to relocate the facility, but, as Barnett was also aware, Clark had begun to move equipment from Leakesville to the Shubuta property.

(Direct Examination of Charles Clark)

BY MR. PALMER:

Q. [At the time of the taking] what had you done to start the process of completing your sawmill operation?

A. We had - - we had move the saw filing room from Leakesville to Shubuta. We had moved the Irvington mower drop saw trimmer from Leakesville to Shubuta. We had moved 500 linear feet of edge sorter and - - we had installed - - moved them and installed it in Shubuta.

Q. Is that what's shown here as edge sorter on this map (indicating)?

A. Yes, sir. That's 500 linear feet of edge sorter that we had moved from Leakesville to Shubuta and had installed it. The green chain (indicating) had been completely dismantled at Leakesville and was ready to be moved to Shubuta. The grading - - the grading and hauling in dirt, bulldozer work, on the area that - - on this area where you see in yellow (indicating) - -

Q. Now we're looking at Exhibit 2 that's in evidence?

A. In that area, the grading, bulldozer work, getting ready to pour the foundation had already been started. We were well in the process when we received word that this is where they're coming.

The Shubuta property also contained an office and a storage shed-type facility.

¶16. Barnett explained that it was apparent from his prior knowledge of Clark's intent which was supported by improvements being made to the property, both parcels would be incorporated in a manner to allow the continuous flow of improvements and raw material across the entire acreage.

(Direct Examination of Joe Barnett)

BY MR. PALMER:

Q. All right. Let me explore a few of those issues with you. If allowed to testify, Mr. Barnett, could you and do you arrive at an opinion as to the highest and best use of this 116 acres?

A. Yes, sir.

Q. And what do you rely on to do that?

A. The factors that are requisite in determining highest and best use as described by every instrument instructing appraisers that's out there are basically four. Those are, is it physically possible, legally permissible, financially feasible, and does it yield the greatest dollar return value for the property? And at the time that we - - I keep referring to "we." It's me, I. At the time that I looked at the property, I applied those four criteria; and based on what the adjacent property had been used and was being used for and the fact - - I keep referring to the proposed move. There was, in fact, some of the equipment and the - - I guess some 200 feet maybe of edge trimmer and that was already in place or in place for this; but it just wasn't functional, wasn't in use as of yet. It was being - - in the process of putting together this operation for this third phase of this business up there.

Q. That was at the time of the taking?

A. That's correct, sir. And furthermore, he had methodically applied the assemblage or the plottage of his acquisition to make and to constitute the 116 acres that he had put together there in a contiguous manner, which would have - - albeit a narrow connection, it would still have been in excess of 200 feet which would allow the flow of raw materials and finished products . . . through all of his operations there so that it would have been a continuous, uninterrupted flow of material or property. In my best judgment, I realized from 1985 what his plan had been, . . . .

¶17. Although there are no improvements on the pine-covered 55 acres, that tract is contiguous to the rest of the cleared and improved property. Barnett testified that the 55 acres would have had a greater value if there would have been a continuous flow of the wood products facility across the entire acreage. Barnett stated, "I was convinced then, and I'm convinced now that it would have been a greater value to him, the property, to allow this continuous flow of raw material, partially-finished product and finished product to and fro across the entire parcel."

¶18. Given (1) Clark's plan to relocate his Leakesville operation to Shubuta and expand across the entire acreage there, which was no longer purely speculative at the time of the taking, and (2) Barnett's testimony concerning the likelihood of increase in value of the land if used in assemblage for the continuous flow of the wood products operation, we think Clark met the *Rogers* test and showed that the entire 116.31 acres is adaptable to an industrial use, that it will be put to an industrial use within a reasonable time, and that the market value of the land would be enhanced by an industrial use. *Rogers*, 256 Miss. 808, 112 So.2d 250. Therefore, Barnett was entitled to opine that the highest and best use of the 55 acres would have been for the planned expansion of Clark's business onto that land. As such, the trial court improperly excluded Barnett's proffered testimony. Of course, we do not hold as a matter of law that the 55 acres had a highest and best use as industrial, only that Clark met the threshold test established in *Rogers* to warrant admission of such testimony.

### B. Landowner's Testimony

¶19. Clark also argues that his testimony as to the highest and best use of the 55 acres and comparable sales was improperly excluded. The Commission contends that such testimony was properly excluded since the basis of Clark's lay opinion rested solely on his expert's opinion which was determined inadmissible.

Because of our disposition of Clark's first assignment of error, the Commission's argument is somewhat moot. However, there are certain aspects of this point of error which merit discussion.

¶20. "It is settled in eminent domain practice that a landowner may give his opinion of the fair market value of his property." *Potters II v. State Hwy. Comm'n of Miss.*, 608 So. 2d 1227, 1235 (Miss. 1992) (citations omitted). A landowner is exempt from showing that he possesses the qualifications necessary in law to be accepted as an expert witness. This rests on the premise "that the landowner through his ownership has acquired a unique view of the property and that he can and ought to be allowed to share this view with the jury." *Id.* at 1235.

¶21. In the case at bar, Clark proffered testimony concerning the highest and best use of the subject property, comparable sales, and prior sales of the subject property. Based on the record before us, all of that testimony should have been admitted and such would be subject to cross-examination.

¶22. As to the prior sales of the property involved, we remind the trial court that when a parcel of land is taken by eminent domain, the price that the owner paid for it when he acquired it is an important piece of evidence in determining its present value. *See* Julius L. Sackman, Nichols on Eminent Domain § 12B.04 (3d ed. 1999). As to the highest and best use and comparable sales, we note that at the time of the trial Clark had been a resident of Shubuta for thirty-one years and testified that he was familiar with sales of industrial property in that area. We think this sufficient basis for allowing Clark to testify to comparable sales, his opinion of the highest and best use of the land, and ultimately to his opinion of the fair market value of his property. "Because landowners ordinarily are not experts and trained in the field of property valuation, we do not hold them to the precise modes of articulation of the way in which they arrive at the values they give." *Potters II*, 608 So. 2d at 1235.

¶23. Additionally, the record reveals that Clark proffered a much higher damages opinion than did the Commission, reflecting his view that his business operation losses should be compensable. Although evidence of the character and extent of Clark's business is relevant as tending to show the highest and best use for which the land is available, income or loss of income from the business conducted upon the property is inadmissible. As stated in *Potters II*, "Condemnation cases are not vehicles through which a landowner may seek and recover the value of a business, however thriving, nor the loss of profits he might have made had he retained the property." *Potters II*, 608 So. 2d at 1232.

¶24. Should the jury find that the southwest parcel did in fact have a highest and best use as industrial before the taking which was subsequently lowered to timber land, the measure of damages would be the difference in value before and after the taking. *Fires*, 693 So.2d at 920-21.

### III. WHETHER THE TRIAL COURT ERRED IN GRANTING THE TRANSPORTATION'S COMMISSION'S MOTION FOR A DIRECTED VERDICT.

¶25. In Clark's final assignment of error, he contends that the trial court erred in granting the Commission's motion for a directed verdict. Because of our disposition of the first two points of error, we agree. The Commission presented evidence showing that the highest and best use of the north parcel was industrial and interim timber land for the southwest parcel and that the landowner was entitled to $27,150.00 as just compensation for the taking, Clark's evidence showing otherwise, it was a question for the jury to resolve.

### CONCLUSION

¶26. Because the trial court erred in excluding Clark's testimony and the testimony of his expert appraiser as to the highest and best use of the land, comparable sales, prior sales of the land, and fair market value, we reverse the judgment of the Special Court of Eminent Domain and remand for a new trial consistent with this opinion.

¶27. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR.**

1. The initial trial of this cause held on September 29, 1997, resulted in a mistrial.

