**UNITED STATES of America, Petitioner-Plaintiff,**

v.

**1,108 ACRES OF LAND, MORE OR LESS, IN the TOWNS OF RIVERHEAD AND BROOKHAVEN, COUNTY OF SUFFOLK, STATE OF NEW YORK, and Charles Botto, et al., Defendants.**

**No. C.P. 114.**

United States District Court
E. D. New York.
March 30, 1962.

See also 25 F.R.D. 205.

738

Harry T. Dolan, Sp. Asst. Atty. Gen., for petitioner-plaintiff.

John E. Hurley, Brooklyn, N. Y., for owner of Parcels 65A, B, C and 66.

Berman & Tomaselli, Freeport, N. Y., Elihu Berman, Freeport, N. Y., of counsel, for owner of Parcels 77 and 82.

Harold S. Kohn, New York City, Roger W. Kohn, New York City, of counsel, for owner of Parcel 82.

Andromidas & Pratt, Mineola, N. Y., Charles Andromidas and George C. Pratt, Mineola, N. Y., of counsel, for owner of Parcel 72.

Nathan L. Goldstein, and Joseph Z. Goldstein, New York City, Nathan L. Goldstein, New York City, of counsel, for owner of Parcel 34.

Melvin S. Popper, Syossette, L. I., for owner of Parcel No. 215.

Samuel J. Glickman, of Corwin & Glickman, Greenport, N. Y., for owner of Parcel 228.

BRUCHHAUSEN, Chief Judge.

This action was tried before the Court, without a jury. Exercising its power of eminent domain, commonly termed condemnation, the petitioner, the Government, has taken title to a number of parcels of real property. The contestants, the owners have presented proof and the Court's function is to determine and fix the market value of the parcels at or about the time of the taking, based upon the evidence presented and the applicable rules of law.

The date of the taking and the date of evaluation is November 10, 1959.

The subject property is located in western Suffolk County in the State of New York, distant approximately sixty-five miles east of New York City. Most of it lies in the Town of Riverhead and the balance in the Town of Brookhaven.

The original taking comprised 1,108 acres of land. Prior to or during the trial, the owners of approximately 75% of the land taken entered into stipulations with the Government for the settlement of their claims. Nine claimants, owners of approximately 185 acres of the land taken, submitted proof at the trial in support of their claims. The owners of some twenty-five parcels, comprising approximately ninety-two acres failed to appear at the trial and offered no proof in support of their claims.

In a prior condemnation action (C.P. 84) in the years 1952 and 1953, the Government acquired 4500 acres of land for development and use by Gruman Aircraft Corporation in assembling and testing of aircraft. The present action involves an expansion or extension of the aforesaid prior acquisition.

THE RULES OF LAW FOR DETERMINATION OF VALUES OF PROPERTY TAKEN IN CONDEMNATION

■ (a) The burden of establishing the value rests on the owner. United States ex rel. and for Use of Tennessee Valley Authority v. Powelson, 319 U.S. 266, 273, 63 S.Ct. 1047, 87 L.Ed. 1390; Westchester County Park Commission v. United States, 2 Cir., 143 F.2d 688, certiorari denied 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583.

■■ (b) Fair market value, more profitable uses and the effect of zoning restrictions.

"Just compensation compatible with the requirements of the Fifth Amendment is the fair market value of the condemned property just prior to the tak-

ing." United States v. Meadow Brook Club, 2 Cir., 259 F.2d 41, certiorari denied 358 U.S. 921, 79 S.Ct. 290, 3 L.Ed.2d 239. Fair market value is "what a willing buyer would pay in cash to a willing seller." Baetjer v. United States, 1 Cir., 143 F.2d 391, certiorari denied 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618.

"This evaluation [of fair market value] should reflect not only the purpose for which the property has theretofore been used, but other uses which might render if more profitable. * * * It would be improper to value the property as if it were actually being used for the more valuable purpose. But the 'extent that the prospect of demand for such use affects the market value while the property is privately held' should enter into the calculation. * * * Obviously the more profitable operation must be one allowed by law to be carried out on the premises. Thus if existing zoning restrictions preclude a more profitable use, ordinarily such use should not be considered in the evaluation." United States v. The Meadow Brook Club, supra.

■ (c) Sales at arm's length of similar property are the best evidence of market value. In the absence of such evidence a determination of value becomes at best only a guess by informed persons. There is no absolute rule which precludes consideration of subsequent sales. The general rule is that evidence of similar sales in the vicinity made at or about the same time is to be the basis for the valuation and evidence of such sales should generally be admissible. Baetjer v. United States, supra; United States v. 63.04 Acres of Land, 2 Cir., 245 F.2d 140.

■ (d) Opinion evidence.

"Opinion evidence * * *, its weight depending on its origin and the extent to which it is supported by facts. Standing alone, it is inconclusive and often tainted." Welch v. Tennessee Valley Authority, 6 Cir., 108 F.2d 95, certiorari denied 309 U.S. 688, 60 S.Ct. 889, 84 L.Ed. 1030. To same effect, State of Washington v. United States, 9 Cir., 214 F.2d 33, certiorari denied 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679.

"Opinion evidence is not evidence of fact. The trier of fact is not bound to follow the expert." United States v. Honolulu Plantation Co., 9 Cir., 182 F.2d 172, certiorari denied 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 602.

It is therefore clear that the owners have the burden of supporting their claims with proof that their valuations are fair market value. In establishing values, they are not limited to the consideration of present uses, but may include such other uses as are more profitable, provided there is a demand therefore and they are allowed by law.

The claimants' proof falls within two categories, industrial use and residential use.

■ Such evidence as was offered on the theory of industrial usage must be disregarded. Present zoning regulations prohibit such use and no market or demand was shown to justify the probability of a change in zoning to permit such use. Furthermore, no applications have been filed for amendment of the law to include such uses. The zoning regulation permits farming and residential subdivision, with a minimum area of 8400 square feet per plot and a width of not less than 70 feet.

■ Unless a substantial market existed for homesites, and the overwhelming proof is that there was no such market at the date of taking, valuations based upon subdivision of the parcels into plots for homeseekers, is lacking in foundation. This was not a residential area. During the course of many years, prospective developers have prepared and filed maps and endeavored to interest purchasers in acquiring plots.

Such activity has largely been confined to paper subdivisions. It is true that a few dwellings have been erected but by and large the ventures were unsuccessful. The only recent filing was the Peters Map in 1953. This was an unsuccessful venture. Sales reached their peak in 1955 and 1956. The subject area has remained practically dormant for many years, excepting for the plant constructed for the

Gruman Aircraft Corporation by the Government. Thousands of feet of main road frontage are available and unimproved. Along Route 25 there is limited business use.

"Woodland Acres" is no criterion for the subject area. This development is close to Long Island Sound, quite a distance to the north, with an elevation of 150 to 200 feet above sealevel and accessible to the beaches. It is evident that vast sums have been expended in its development. Such expenditures would seem unwarranted in the subject area.

My personal inspection on July 21, 1961 and previous visits to the area, coupled with the credible evidence establish that much of the terrain is wooded, uncleared and undeveloped and the soil there generally is unsuitable for agricultural purposes. The cleared portions, where the soil is adaptable, is devoted to farming. There is no escape from the conclusion that the best use is for limited farming.

### THE CLAIM OF ZALMIN DEANIN ET AL. FOR PARCEL 34

Parcel 34 is a plot containing 43.57 acres, with a frontage of 811.38 feet on the south side of Route 25 at or near its junction with Parker Road (Govt. Exh. 2).

The claimant's expert, Irvin Sankin, testified that 31.345 acres constitute cleared farm land and the balance is uncleared. On the property is a 12-inch well and a pump house. The witness asserted that the frontage on the highway to a depth of 200 feet could be utilized for business or commercial use. He submitted no sales to support his estimate of value, which is as follows:

| | |
|---|---|
| Land value | $146,000.00 |
| Improvements | 4,000.00 |
| | $150,000.00 |

The main claim for said land value is its theoretical subdivision into building plots. This is insupportable, as previously mentioned. The Government produced evidence of the sale of the subject property in 1955 for $43,600. (Govt. Exhs. 18, 21)

The estimate of the Government's expert, Frank J. Smith, is as follows:

| | |
|---|---|
| Land value | $39,545.00 |
| Pump house | 450.00 |
| | $39,995.00 |

In summary, the values per acre are:

Claimant—average value approx. $3,000
Govt.      "                      910

### CLAIM OF LUCY SCHWONIK ET AL. FOR PARCEL 65A

Parcel 65A is a plot containing 19.74 acres, with a frontage of 455.59 feet on Route 25A. The land usage is farming. The owner testified that it costs $500 per acre and takes four years of work to develop a farm of this type. The claimant's expert, George P. Tobler, appraised the parcel as follows:

| | |
|---|---|
| Land (35½ acre plots raw, at $1200) | $42,000.00 |
| Land (2.24 acres with road frontage) | 4,200.00 |
| Improvements | 22,000.00 |
| | $68,200.00 |

| | |
|---|---|
| 2-story brick 7-room dwelling | $13,500 |
| 2-car garage with small rug weaving shop | 3,000 |
| Pump house | 1,500 |
| Deep well | 2,500 |
| 2-story wood frame potato barn | 1,500 |

The appraisal indicates a land value, exclusive of improvements, of over $2,000 per acre.

Mr. Tobler also uses a theoretical subdivision as his principal element of value. He submitted five sales.

Sale No. 1 is admittedly not comparable. (Tr. 73)

Sales Nos. 2, 4 and 5 are clearly not comparable.

The parcels are located in the Baiting Hollow area and within a comparatively short distance from Long Island Sound. Sale No. 3 pertains to a plottage of ten acres, located almost two miles southwest

of the subject parcel. It consisted of ten acres, located on the Wading River-Manorville Road and partly on Long Pond Road, an offshoot of the latter named road. The purported sale price was $10,000 or an average of $1,000 per acre. None of the parcels involved in those sales were devoted to farming.

The appraisal of the Government expert is:

| | |
|---|---|
| Land value | $17,132 |
| Buildings | 9,000 |
| | $26,132 |

The appraiser stated that his value was approximately $1,350 per acre, including improvements and $890 per acre, excluding improvements.

## CLAIM OF LUCY SCHWONIK ET AL. FOR PARCEL 65B

Parcel 65B is a plot containing 25 acres with a frontage of 891.26 on the south side of Route 25A. 15 acres are farm land and 10 acres in the rear thereof are wooded. George P. Tobler appraised the parcel (Exh. 3) as follows:

| | |
|---|---|
| 891.62 road frontage x 200' depth 4.094 acres | $ 7,676.00 |
| Remainder 20.906 acres at $1,500 | 31,359.00 |
| | $39,035.00 |
| Less—cost of clearing woodland | 2,500.00 |
| | $36,535.00 |
| Improvements—3-story potato barn $18,500 small wooden tool shack 800 | |
| | 19,300.00 |
| Total | $55,835.00 |

The appraiser indicated a value, exclusive of improvements of over $1,460 per acre.

The Government appraiser's values are:

| | |
|---|---|
| Land | $17,875 |
| Buildings | 6,250 |
| Total | $24,125 |

This is an average of $750 per acre.

## CLAIM OF FRED SCHWONIK FOR PARCEL 65C

Parcel 65C contains 6 acres. Mr. Tobler, the claimant's expert, stated that its best use is for residential purposes and would subdivide into twelve one-half acre building plots of a value of $1200 each or a total of $14,400.

The Government's expert valued the parcel at $4600, an average of $766 per acre. He contends that Mr. Tobler's valuation of $2400 an acre is untenable.

## CLAIM OF CLAUDE SCHWONIK ET AL. FOR PARCEL 66

Parcel 66 consists of 0.49 acres including frontage of 201.99 on Route 25A.

The claimant's appraiser, Mr. Tobler, values the property at $2,000.

The Government's value is $1,500.

## CLAIM OF JACK NELSON FOR PARCEL 72

Parcel 72 is a wooded area, containing 47.729 acres of land, with no road frontage, although it is part of a larger acreage, with frontage.

Mr. William Edwards, the claimant's expert, valued the parcel at $1,000 per acre, assuming continuation of the present zoning (Farm No. 1) plus an increment of $750 per acre, because of the alleged probability of rezoning for industrial purposes. Mr. Edwards submitted a list of 17 sales in support of his claim of value for residential use but no credible evidence of any projected change of zoning.

The claimant purchased the entire acreage in 1954 at a price averaging $650 per acre, including about 4500 feet of road frontage.

Sales Nos. 1, 6, 7, 8, 10 and 12 were of business property and therefore not comparable. The circumstances involved on Sale No. 3, as well as a prior sale of the property affected clearly demonstrate its lack of probative value. Other sales involved cleared land or properties with road frontage.

The Government's expert valued the parcel at $550 per acre or a total of $26,250.

## CLAIM OF EMIL KEEN ET AL. FOR PARCELS 77 AND 82

Parcel 77 consists of 668 lots, shown on the map of Hawthorne Manor.

Parcel 82 consists of 5 lots, shown on the same map.

Anthony Psota, the claimant's expert, valued the parcels at $103,400, which on an acreage basis indicates approximately $2,491 an acre.

Mr. Psota contended that the best available use was for residential plots of 8,000 square feet each. The present zoning regulations call for a minimum of 8400 square feet. A major weakness in his estimate is that he failed to allow for the cost of development. He presented a paper subdivision, not an actual development. Furthermore, he submitted a number of sales in "Woodland Acres," previously mentioned. Other sales are either in a commercial district or of small homesites. None of those sales are at all comparable.

The Government's expert values parcel 77 at a total of $30,500 or about $735 per acre and parcel 82, consisting of 5 lots, at $500. It appears that the land is covered by a growth of small and medium oak trees.

## CLAIM OF HERBERT HAMBURGER

Parcel 215 is the northerly part of a tract, containing about 97 acres. The portion taken is 6.07 acres and is largely wooded. It was acquired by the owner in 1956 at a price, averaging about $125 per acre. The owner values the parcel at $1,000 per acre but submitted no sales in support of his claim.

The Government values the parcel at $2,450.

## SUMMARY OF THE CLAIMANTS' BASIS OF VALUE

So much of the claimants' proof, as pertains to prospective industrial usage, must be disregarded. The local zoning law, as stated, precludes such use.

Testimony of claimants' experts to the effect that the parcels, or some of them, may be best used for residential use is utterly lacking in support. Even if there were a demand for homesites, and none is apparent, the failure of the experts to allow for the cost of development, renders their conclusions most vulnerable and unacceptable.

No proof was offered at the trial by the owners of other parcels, subject to valuation by this Court.

After careful consideration of the record, exhibits, briefs and the sales of properties, relied upon, which, together with the subject parcels, I personally inspected in company with the experts and the attorneys for the parties, I determined that just compensation for the property taken is as follows:

| | | |
|---|---|---:|
| Parcel 33—Land | | $18,000 |
| Parcel 34—Land | | 45,000 |
| | Building | 450 |
| Parcel 65A—Land | | 20,000 |
| | Buildings | 10,000 |
| Parcel 65B—Land | | 20,000 |
| | Buildings | 7,500 |
| Parcel 65C—Land | | 5,000 |
| Parcel 66—Land | | 1,500 |
| Parcel 72—Land | | $28,500 |
| Parcel 76—Land | | 315 |
| Parcels 77 and 82—Land | | 32,000 |
| Parcel 84—Land | | 210 |
| Parcel 109.2 | | 1,000 |
| Parcel 109.9 | | 225 |
| Parcel 109.11 | | 225 |
| Parcel 109.27 | | 175 |
| Parcel 109.29 | | 50 |
| Parcel 109.31 | | 125 |
| Parcel 109.33 | | 75 |
| Parcel 202B | | 315 |
| Parcel 215 | | 2,600 |
| Parcel 274 (43 acres) | | 22,500 |
| Parcel 281.5 | | 30 |
| Parcel 281.9 | | 50 |
| Parcel 281.25 | | 100 |
| Parcel 281.26 | | 100 |
| Parcel 281.28 | | 10 |
| Parcel 281.46 | | 100 |
| Parcel 281.50 | | 40 |
| Parcel 281.56 | | 20 |
| Parcel 281.60 | | 20 |
| Parcel 282.3 | | 75 |
| Parcel 282.4 | | 125 |
| Parcel 282.21 | | 125 |
| Parcel 282.42 | | 25 |

 

This opinion includes the findings of fact and conclusions of law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Submit judgment.