646 So.2d 1290 (1994)
J. Rosco DENNIS, Jr., and Marie Dennis Key
v.
The CITY COUNCIL OF GREENVILLE, Mississippi.
No. 91-CA-0492.
Supreme Court of Mississippi.
December 1, 1994.
Stephen L. Thomas, Jenny M. Virden, Lake Tindall Hunger & Thackston, Greenville, for appellants.
G. Kenner Ellis, Jr., Greenville, for appellee.
En Banc.
DAN M. LEE, Presiding Justice, for the Court:
This appeal arises from an eminent domain proceeding brought by the City of Greenville to acquire 5.515 acres of a 70-acre tract for the construction of a detention basin and pumping station. The lower court excluded evidence of the landowners' experts relating to comparable sales of property supporting an appraised value based upon use of the property in the manner for which it had been zoned by the City of Greenville, while admitting into evidence an appraisal based upon a use of the property in a manner inconsistent with its present zoning, but as if re-zoning were an accomplished fact. We reverse and remand.

I.
The condemned 5.515 acres are part of a 70-acre tract of undeveloped land owned by J. Rosco Dennis, Jr., and Marie Dennis Key. The property is located within the city limits of the City of Greenville, Mississippi ("City"), and was zoned R-2, single family residential. Following the procedure set forth in Miss. Code Ann. § 11-27-7 (1972), the City filed a statement of values setting the fair market *1291 value of the condemned 5.515 acres at $11,600.00, and zero for damages to the remaining 64.5 acres, for total compensation of $11,600.00. The landowners filed their statement of values which set the fair market value of the condemned 5.515 acres at $68,937.50, and set damages to the remaining 64.5 acres at $1,000.00 per acre, for a total compensation due of $133,937.50. At the eminent domain hearing to establish just compensation, the trial judge refused to allow the landowners' evidence of sales of comparable property to be admitted into evidence, as well as certain expert testimony of the landowners' two appraisers regarding evaluation of the property. Instead, the trial judge admitted only the City's appraisal, which was supported by comparables, and, consequently, valued the total due at $11,600.00, based upon the evidence put forth by the City. No damages were awarded the landowners on the remaining 64.5 acres.

II.
By February 25, 1991, an order, based upon joint motion and stipulation, by the county judge of Washington County, sitting as a Special Court of Eminent Domain, awarded the City title and immediate possession of the condemned 5.515 acres. The order adjudicated that the City would "suffer irreparable harm" by delay and that the taking was in the public interest. A hearing "to establish the reasonable value of said property and the amount of damage" due the landowners was set for April 15, 1991.
The hearing began as scheduled on April 15, 1991. The City called witnesses, Michael McKenzie, its assistant city engineer, and John W. Young, an appraiser. The City placed Young's written appraisal into evidence. That appraisal estimated $11,581.00 to represent the difference in value before the taking and after the taking. Young's calculation was based solely upon the value of the 5.515 acre parcel taken, valued at $2,100.00 per acre, and he did not attribute any monetary damage to the remaining 64.5 acres after the taking of the 5.515 acres.
The landowners objected to the introduction of Young's appraisal on two grounds. First, the landowners objected to the appraisal and Young's testimony because he failed to apply the "before and after" rule in valuing the entire 70-acre tract.[1]
Second, the landowners also objected on grounds that Young, in applying the market approach method of appraisal, used as three comparable sales, land transactions involving agricultural lands, all lying outside the city limits, and some as far away as eleven miles. Young contended that the use of those comparables was appropriate because he determined that the "highest and best use" of the condemned acreage was for agricultural purposes.
Landowners argued that the 70 acres were located inside the city limits and were zoned R-2, for single family residential usage, not agricultural purposes. Landowners offered the testimony of appraisers, Gerald Abraham and Anson Sheldon, who testified that the highest and best use of the property was the use for which the City had previously zoned the property  use for single family residential dwellings. The landowners attempted to demonstrate, through the expert testimony of its two appraisers, that if the subject property were developed into residential lots to be put on the market for single family residential dwellings, the lots would sell. Therefore, according to the landowners' appraisers, just compensation for the 5.515 acres was $68,937.50, and the remaining 64.5 acres would be damaged in the amount of $1,000.00 per acre, for a total of $133,937.50.
In support of their valuation, the landowners' appraisers testified as to sales of other property which they contended represented comparable sales. However, the trial judge rejected that evidence of comparable sales, sustaining the City's objection to those comparables, thereby precluding the landowners from making a showing of just compensation and damages, as demonstrated below:
BY MR. ELLIS [Counsel for City]: Your Honor, at this point we would object *1292 to any comparables  the introduction of any sales price with respect to the comparables referred to by the witness. They are remote and distant and simply no similarity between the area referred to as far as development is concerned  it's some two and a half  three miles from the subject location. One tract is seventy acres in size and the other is a residential lot of one acre in size. We simply fail to find sufficient similarity to warrant the fees being used as comparables in this case.
BY THE COURT: Mr. Thomas?
BY MR. THOMAS [Counsel for landowners]: Well, I think the witness makes appropriate adjustments for those same things Mr. Ellis has stated. I know [sic] with some interest that the City's comparables  two of them are there in Leland  none of them are as close as any of this  this is the most comparable  none of them are R2 property. This is  these are the closest R2 sales to this property that there are.
....
BY THE COURT: All right. The Court has some problems with these comparables. Certainly, these are in developed areas. We are talking about a portion of the seventy acre [sic] undeveloped tract. It's the Court's opinion that there's not sufficient similarity to allow them as comparables. I'm going to sustain the objection.
Nevertheless, the trial judge allowed the landowners to make a record of the contended comparable sales and the landowners later re-offered the testimony of appraiser Abraham. That offer was met with an objection by the City, which the lower court sustained.
BY MR. THOMAS: Your Honor, I would like to re-offer Mr. Abraham's testimony on the other comparable sales subject to his making appropriate adjustments. Under the City's theory, there are no comparables in the City of Greenville because that is the only undeveloped tract there is left. It's the only R2 tract left in Greenville.
....
BY THE COURT: All right. I'm going to sustain the objection.
The landowners also attempted to offer proof of damages to the remaining 64.5 acres. According to the landowners, if the land were developed for the highest and best use, residential purposes, problems with mosquitos, seepage, and snakes would be encountered because of the water in the detention basin. The landowners also argued that the excessive noise that would be generated by the pumps which the City planned to install would be a detriment to sales of lots.
The Court took the matter under advisement and entered its order on April 30, 1991. In that order, the trial judge accepted the City's valuation, and ordered the City to pay the landowners $11,600.00, concluding as follows:

The owners offered substantial testimony as to the highest and best use of the subject property being single family residences. The testimony of the Owners' experts centered solely on the development of this property into a residential single family dwelling subdivision... . This position is based upon rank speculation. ...
On the evidence before the Court, it is bound to accept the valuation made by Mr. John W. Young, there being no testimony, not speculative in nature, in opposition to it.

(emphasis added).
Landowners contend that the following assignments of error require reversal:
A. The trial court erroneously refused to consider the valuation of defendants' appraisers.
B. The trial court erred in finding the appraisal offered by the City of Greenville was prepared following acceptable guidelines for establishing the value of the property subject to eminent domain proceedings when: (1) the City never appraised the value of the entire 70-acre tract before and after the taking of a small part of it; (2) the appraisal included no award of damages [for the remainder]; and (3) the appraisal was premised on the conclusion *1293 that the property's highest and best use was for agricultural purposes, which was contrary to the overwhelming weight of the evidence.
After consideration of the first assignment of error, we conclude that the case sub judice should be reversed and remanded.

III.

THE TRIAL COURT ERRONEOUSLY REFUSED TO CONSIDER THE VALUATION OF DEFENDANTS' APPRAISERS.
On appeal, the landowners do not challenge the authority of the City to condemn the property. However, the trial court's failure to admit evidence of comparables which would support the landowners' appraiser's opinion regarding valuation is contested.
Once admitted into evidence, the court, as fact-finder, could accept or reject the evidence of comparables in resolving the issues. But, in the case sub judice, the trial court, by not allowing the landowners to put the testimony of expert appraisers into evidence regarding sales of lots for single-family residences, thereby prevented the landowners from substantiating their valuation and appraisals with comparables. Consequently, the landowners' evidence, which would have provided an alternative valuation for consideration and which may have refuted the City's valuation testimony which was supported by comparables of distant agricultural sales, was excluded from evidence by the trial judge.
Upon deliberation by the trial judge, the competing valuations and the credibility of the evidence supporting them would have been properly considered, resulting in one being accepted and the other rejected by the trial judge. But here, the trial judge restricted the evidence which he should have considered in rendering his decision to only the City's valuation and supporting evidence, resulting in only one valuation choice, based upon the evidence which was admitted at trial. During the trial, the lower court judge simply confused the admissibility of the valuation and supporting comparables of the landowners' appraisers with the credibility of such evidence which should be considered in reaching a decision on the merits.

A.
As to valuation and the considerations inherent in such a determination, we have previously stated:
[V]alue is in large part a function of the earnings one might reasonably expect from prudent use, and so future profitability is a major factor our knowing and willing buyer and seller will sensibly consider before settling on a sales price.
....
... In seeking value, we assume that our rational, wealth-maximizing buyer and seller will inform themselves of various uses of the property and will trade by reference to the most profitable use.
Potters II v. State Highway Comm'n, 608 So.2d 1227, 1232-33 (Miss. 1992). Furthermore, in establishing and supporting an expert's valuation, and applicable in the case before us, we have observed that:
Here two principles are at odds with one another. An expert witness by definition will be familiar with the types of theory and data on which he ought rely in giving his opinion. See Rules 703, 705, Miss. R.Ev. When, as here, an expert witness opines that certain factors have to be considered in order to properly establish fair market value, we necessarily accord the expert substantial discretion. Attacks upon his foundational opinions often confuse admissibility with credibility.
Id. at 1234, n. 7.
The City offered an expert who used comparables consisting of land outside the city limits, up to eleven miles away, and zoned for agricultural use, not R-2. In contrast, the landowners offered an expert who used comparables of land located within the city limits which was zoned R-2, and which the expert opined was comparable to the land in question. The City complained that the landowners' comparables were in developed subdivisions and in more desirable areas. Without allowing the expert to make appropriate adjustments for location and differences, the court excluded the landowners' comparables.

*1294 B.
It has been the long-standing rule in Mississippi that "evidence of the sale price of similar property is admissible in eminent domain proceedings." Pearl River Valley Water Supply Dist. v. Wright, 203 So.2d 69, 71 (Miss. 1967). See also Pearl River Valley Water Supply Dist. v. Wood, 252 Miss. 580, 172 So.2d 196 (1965); Mississippi State Highway Comm'n v. Rogers, 236 Miss. 800, 112 So.2d 250 (1959); Mississippi State Highway Comm'n v. Daniels, 235 Miss. 185, 108 So.2d 854 (1959). Further, we have held on prior occasions that parties may properly rely on the use of comparable sales in establishing the value of property, and "we do not require the comparable sales to be identical in every respect." Howell v. State Highway Commission, 573 So.2d 754, 757 (Miss. 1990) (citations omitted).
At trial, the City's expert testified that, although the property was located within the city limits and it was zoned R-2 for residential use, it was not currently under development. Therefore, according to the City, the highest and best use of the property was for agricultural purposes, not single-family residential use.
We have held that the "potential" for development is a factor to be considered in deriving the value of property. Paulk v. Housing Authority of City of Tupelo, 204 So.2d 153 (Miss. 1967). See also Mississippi State Highway Commission v. Wagley, 231 So.2d 507, 509 (Miss. 1970). And, as stated in 5 Nichols, The Law of Eminent Domain ¶ 18.05[3] (1994), "the owner may introduce evidence of the highest and best prospective use even though he has no plans to sell the property or utilize it for that use." Therefore, it was not appropriate for the trial judge to exclude the comparables of developed property from admission into evidence merely on the basis that the landowners' property had not yet been developed.
The trial judge erred in excluding the landowners' appraisal and supporting comparables, but that error was compounded by the trial judge's admission into evidence of the City's valuation of the landowners' property. Although the expert for the City testified that about fifty percent of the subject property was unsuitable for farming, the City, nevertheless, based its valuation upon the contention that the highest and best use for the property was for agricultural use.
As we have previously stated:
[T]he property must not be evaluated as though the rezoning were already an accomplished fact. It must be evaluated under the restrictions of the existing zoning and consideration given to the impact upon market value of the likelihood of a change in zoning.
Mississippi State Highway Commission v. Wagley, 231 So.2d 507, 509 (Miss. 1970) (emphasis in original). In admitting the City's valuation, the trial judge ignored the fact that the existing zoning restrictions established the legal parameters for evaluating the property, and that the landowners' property was zoned for R-2, single-family residential use, not for agricultural use. Consequently, since the subject property was zoned R-2, it should have been evaluated under the restrictions of R-2 zoning with consideration given to a potential change in zoning. However, the City's appraisal evaluated the landowners' property as if it had been rezoned for agricultural use.

IV.
The trial judge confused the standard of admissibility of evidence of an appraisal and comparable sales supporting a contended highest and best use of property with the considerations of the weight and sufficiency to be given the evidence after admission. As a consequence, the trial court erroneously excluded from admission into evidence the landowners' evidence of appraised value and comparable sales of residential lots within the city limits which were zoned the same as the condemned property and which the landowners contended supported a viable valuation of their land based upon development of their property into lots for single-family residences, the use for which the property had been restricted through zoning by the municipality. That error was exacerbated by the trial judge's admission into evidence of only the municipality's valuation of the landowners' property which was dependent for support *1295 upon distant sales of land that were zoned agricultural, not single-family residential.
Accordingly, the case is reversed and remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, McRAE and JAMES L. ROBERTS, JJ., concur.
BANKS, J., dissents with separate written opinion joined by SMITH, J.
BANKS, Justice, dissenting:
In my view, there was substantial evidence to support the trial court's conclusion that residential use of the property was speculative. It follows that the court's decision to exclude the residential comparables offered by the landowners' in support of the valuation of their property was harmless and played no significant role in the ultimate decision. I am therefore compelled to dissent.
I agree with the majority that it was error for the trial court to exclude from consideration the conclusions of landowners' appraiser regarding comparables. Once admitted into evidence, the court as fact-finder could accept or reject that evidence in resolving the issues. What we observed in Potters II v. State Highway Commission, is apt here.
Here two principles are at odds with one another. An expert witness by definition will be familiar with the types of theory and data on which he ought rely in giving his opinion. See, Rules 703, 705, Miss. R.Evid. When, as here, an expert witness opines that certain factors have to be considered in order to properly establish fair market value, we necessarily accord the expert substantial discretion. Attacks upon his foundational opinions often confuse admissibility with credibility.
Potters II, 608 So.2d 1227, 1234 n. 7 (Miss. 1992).
While it is true that we have held that it is error "to consider as evidence the sales of non-comparable property," State Highway Commission of Mississippi v. Smith, 511 So.2d 881, 883 (Miss. 1987), here, there were substantial differences between the comparables offered by both sides, apparently out of necessity. There were no recent sales of property of similar size, soil type, and zoning within the city limits within an acceptable temporal limit. All comparables had to differ in some respect.
I hasten to observe, however, that there was no objection made when the city's expert testified with respect to the comparables he utilized, despite the fact that the landowner urged the court to reject that testimony based, in part, upon insufficiency of those comparables. It cannot be claimed, then, that the court ruled with an uneven hand in this respect.
More importantly, it is clear that the exclusion of the landowners' comparables played no significant role in the ultimate decision. The landowners' valuation was admitted. Only the comparables supporting the expert opinion were excluded. Ultimately, however, the trial court concluded that residential use of the property in question was speculative because there were no present plans for such use and "no reasonable prospects in the foreseeable future for development of this property into residential use." The court based its determination upon the testimony of John Young, the city's appraiser. Young described the general topography of the land as slightly rolling, and composed of slough and quicksand. He testified that the only appropriate zoning for the land was agricultural and he did not believe that there would be any residential use of the land in the foreseeable future. He further testified:
Nobody is going to want to live down there as evidenced by the fact that nobody has bought that land going down or built on that land going down southwest there on the east side of the road.
The trial court found the highest and best use of the property to be agricultural, reasoning:
The testimony of the Owner's experts centered solely on the development of this property into a residential single family dwelling subdivision. It is very apparent that this is mere speculation due to the *1296 lack of any testimony that there are any plans for such a development. This position is based on rank speculation. The more believable testimony considering the economic conditions of the City of Greenville, the location of the property, and the future growth area of the City of Greenville shows no reasonable prospects in the foreseeable future for development of this property into residential use . ..
On the evidence before the Court, it is bound to accept the valuation made by Mr. John W. Young, there being no testimony, not speculative in nature, in opposition to it.
Viewing the record in the light most favorable to the court's conclusion, it cannot be said that it was manifest error or not supported by substantial evidence.
It follows that the error in excluding the testimony concerning comparables is not ground for reversal. The trial court did not find fault with the landowners' valuation as residential property because the comparables were excluded. Instead, in its role as fact-finder, it rejected the premise that there was a "probability that the land would be used within a reasonable time for [single family residences]." Mississippi State Highway Commission v. Brooks, 239 Miss. 308, 123 So.2d 423, 427 (1960); State Highway Commission of Mississippi v. Smith, 511 So.2d at 883.
Our rule is that while any use to which land is reasonably suited must be considered, "[m]ere speculative uses cannot be considered. There must be some probability that the land would be used within a reasonable time for the particular use" proposed. Brooks, 123 So.2d at 427. That is, "[t]here must be a present demand for the land for such purpose or a reasonable expectation of such demand in the near future." Id.; Redevelopment Authority of the City of Meridian v. Holsomback, 291 So.2d 712, 714 (Miss. 1974).
Moreover, the fact that the property in question was zoned residential is not determinative of whether the court was required to find the highest and best use of the property as residential where there was no reasonable expectation that the property would be so utilized. We applied the rule in Holsomback, 291 So.2d at 714, where the city sought valuation on residential use despite zoning as commercial. The landowner prevailed but only because he presented substantial evidence allowing the fact-finder to conclude that there was a reasonable probability of commercial use. A similar rule prevails in other jurisdictions. Parish of East Baton Rouge v. Thomas, 346 So.2d 364 (La. Ct. App. 1977); United States v. 1108 Acres of Land, 204 F. Supp. 737 (E.D.N.Y. 1962); State Department of Highways v. Vallon, 182 So.2d 705 (La.Ct. of App. 1966); Kaperonis v. Iowa State Highway Comm., 251 Iowa 39, 99 N.W.2d 284 (1959).
In Parish of East Baton Rouge, property was zoned for multi-family dwellings, however, the court valued the property as single-family residential, reasoning that multi-family use of the property was not reasonably prospective, but speculative and conjectural. Parish of East Baton Rouge, 346 So.2d at 364. The court found that there was a lack of demand for apartments in the area and a prevailing use of the property in the area for single-family subdivisions. The court held that,
[w]hile it is evident that zoning classifications are to be given serious consideration in determining the highest and best use of the property, they are not determinative. When property is zoned for a use for which there is no reasonable expectation that the property may be so utilized, a lesser included use may be deemed, as here, to be the highest and best use for purposes of valuation.
Id. at 366-367.
In 1108 Acres of Land, a zoning ordinance permitted farming and residential use of property. 1108 Acres of Land, 204 F. Supp. at 737. The court rejected residential use of the property as a basis of valuation where the court found that a substantial market for residential use of the property did not exist, where few dwellings had been erected in the vicinity, and where much of the terrain was wooded, undeveloped and uncleared.
In Vallon, property was zoned for light industrial use. However, the court valued *1297 the property as residential. Vallon, 182 So.2d at 705. The court found that the property was unfit for industrial use where the size of the property was inadequate for the operation of most industrial businesses, where automobile access to the street fronting the property was industrially impractical, and where there was no evidence adduced at trial which would have indicated any trend for industrial use in the area in the near future.
In Kaperonis, property was used for residential purposes but zoned industrial. Kaperonis, 251 Iowa at 39, 99 N.W.2d 284. The court valued the property as residential reasoning that use of the property for industrial purposes was so remote or speculative that the value of the property was not affected thereby.
The trial court here was not obliged to value the subject property as residential simply because it was zoned residential. In valuing the property based upon the evidence, the court was bound by our rule to determine first, whether the there was a reasonable probability of single family use within a reasonable time. The court made explicit findings that there was not. Because the trial court's finding is supported by the evidence, it should be credited by this Court. That finding obviates the effect of any error regarding the admission of residential comparables in aid of valuation for residential use. Holsomback, 291 So.2d at 714 (where there was substantial evidence to support the verdict, the admission or exclusion of particular evidence was deemed harmless); see also Hart v. Herring, 228 Miss. 446, 88 So.2d 108, 109 (1956) (exclusion of evidence as to extent of disability held harmless where verdict was for defendant); Miley v. Foster, 229 Miss. 106, 117, 90 So.2d 172 (1956) (exclusion of evidence as to defendant's financial worth held harmless where verdict was for defendant); Bass v. Burnett, 151 Miss. 852, 861, 119 So. 827 (1929) (exclusion of evidence as to mental suffering in libel action held non-prejudicial where verdict was for defendant); Phillips v. The Dow Chemical Co., 247 Miss. 293, 307, 151 So.2d 199 (1963) (exclusion of financial statement showing wealth of defendant held immaterial where verdict was for defendant).
I would affirm the judgment of the trial court.
SMITH, J., joins this dissent.
NOTES
[1] An amendment to the appraisal and Young's testimony cured the first defect of which the landowners complained.