# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-02167-SCT

*TROWBRIDGE PARTNERS, L.P., A MISSISSIPPI*
*LIMITED PARTNERSHIP; PHIL MOORE; AND*
*NEAL CLEMENT*

*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*


| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/2005 |
| TRIAL JUDGE: | HON. WILLIAM STRATTON AGIN |
| COURT FROM WHICH APPEALED: | MADISON COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANTS: | W. WHITAKER RAYNER STEPHEN W. RIMMER |
| ATTORNEYS FOR APPELLEE: | RICKY L. BOGGAN ALAN M. PURDIE |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 03/22/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from an eminent domain proceeding brought by the Mississippi Transportation Commission (hereinafter "the Commission"). On April 22, 2004, the Commission filed a complaint in the Madison County Special Court of Eminent Domain against Trowbridge Partners (hereinafter "Trowbridge") to condemn 5.05 acres of 8.45 acres of undeveloped land in the City of Madison. The purpose of the condemnation was to reconstruct and relocate a segment of State Route 463 from east of Interstate 55 to US 51 in

Madison, Mississippi. On November 15, 2004, the Madison County Special Court of Eminent Domain awarded the Commission title and immediate possession of the condemned 5.05 acres. At the trial to establish just compensation, the Commission and Trowbridge submitted differing evidence as to the value of the land taken. The jury returned a verdict of $1,108,941, upon which judgment was entered. Trowbridge appeals the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

¶2. The condemned 5.05 acres are a part of an 8.45-acre tract of undeveloped land owned by Trowbridge Partners, L.P., a Mississippi Limited Partnership, with two limited partners - Phil Moore of Madison, Mississippi and Neal Clement of Jackson, Mississippi. The 5.05 acres that the Commission sought to condemn are located directly in the center of the 8.45-acre tract of land. After the taking, the remainder of the subject property included two smaller parcels of land. The parcel located in the northern corner of the subject property was approximately 1.47 acres fronting Hoy Road. The parcel located in the southern corner of the subject property was approximately 1.93 acres.

¶3. The trial commenced on August 9, 2005, to establish the total amount of compensation due to Trowbridge. At trial, the expert appraiser for the Commission, Terry Wells, testified that size is an important factor in determining the value of property and that smaller parcels are worth more per square foot than larger parcels. Wells also testified that the subject property was zoned for C-2 or general commercial development. However, he opined that despite the zoning restrictions, the highest and the best use of the remaining property was for restricted commercial development. During Trowbridge's cross

2

examination of Wells, he explained "that the remaining property would only be developed as restricted commercial [development] for [an] office building or a dentist office or [a] barber shop because it lacks access [to] a heavily-traveled road." Wells opined that the fair market value of the entire 8.45 acres immediately before the taking was $1,582,800, and that the value of the remaining property immediately after the taking was $631,200, for a difference of $951,600 total compensation due to Trowbridge.

¶4. At the conclusion of Wells's testimony, Trowbridge moved to strike his testimony regarding the valuation of the subject property on two grounds. First, Trowbridge contended that Wells's testimony regarding the general appraisal guideline that smaller parcels are worth more per square foot improperly enhanced the fair market value of the remainder property. Secondly, Trowbridge asserted that Wells improperly disregarded the zoning restrictions when determining the highest and best use of the remainder property.

¶5. The trial court judge denied Trowbridge's motion. The trial court ruled that Wells did not offer any testimony stating that the remaining property would be enhanced by the highway expansion project. The court further concluded that Wells testified only as to the general appraisal rule when determining the value of smaller parcels of land. Lastly, the court concluded that the Commission had no requirement to establish a potential zoning change, because C-1 restricted commercial development is a lesser included use of C-2 general commercial development.

¶6. The appraiser for Trowbridge, Hugh Hogue, offered his opinion that, because the remainder property was zoned for C-2 development, the highest and best use of the property was for retail commercial development. Hogue further testified that the fair market value of

3

the 8.45 acres immediately before the taking was $2,208,492 and that the value of the remaining property immediately after the taking was $286,189, for a difference of $1,922,303 total compensation due to Trowbridge.

¶7.     After hearing the evidence and viewing the property, the jury returned a verdict in favor of Trowbridge in the amount of $1,108,941 as just compensation.  Trowbridge filed a motion for Judgment Notwithstanding the Verdict (JNOV), with alternative motions for Amendment of Judgment, or a New Trial and Additur.  The trial court denied Trowbridge's motions. Trowbridge filed a timely notice of appeal.  On appeal, Trowbridge raises two issues: (1) Whether the trial court erred in allowing the Commission's expert appraiser, Wells, in his valuation to consider benefits conferred on the remainder property by the taking; and (2) Whether the trial court erred in allowing Wells to testify that, although the remainder property is zoned for C-2 general commercial development, the lesser included use of C-1 restricted commercial development was the highest and best use of the property.

## DISCUSSION

¶8.     Generally, the admission or exclusion of expert testimony is within the discretion of the trial judge. *Terrian Enter. v. Mockbee*, 654 So. 2d 1122, 1128 (Miss. 1995).  However, "[w]here a court has exercised its discretionary authority in such a way that it misperceives the correct legal standard for admitting the evidence, the deference customarily afforded trial courts in decisions concerning the admissibility of evidence is precluded, because the error has become one of law." *Miss. Transp. Comm'n v. Fires*, 693 So. 2d 917, 920 (Miss. 1997) (citing *Bean v. Broussard*, 587 So. 2d 908, 913 (Miss. 1991)).  This Court "will reverse for erroneous interpretation or applications of the law." *Banks of Miss. v. Hollingworth*, 609 So.

4

2d 422, 424 (Miss. 1992). Evidentiary objections which concern the appropriate legal standard to apply when determining the value of property in eminent domain proceedings are questions of law. *Fires*, 693 So. 2d at 920.

**I.** **Whether the Trial Court Erred in Allowing the Commission's Expert Appraiser, Terry Wells, During his Determination of Value, to Consider Benefits Conferred on the Remainder Property by the Taking.**

¶9. Trowbridge argues that Wells's testimony that smaller parcels of land are worth more per square foot enhanced the value of the two remaining parcels. Trowbridge cites two errors in support of its position. First, Trowbridge alleges that the trial court committed error by allowing Wells to make adjustments to the comparable sales used to determine the value of the property before the taking, when he did not make any adjustments to the comparable sales used to determine the value of the remaining property. The improper adjustments enhanced the per-square-foot value of the two remaining parcels. Second, Trowbridge claims that Wells improperly reduced Trowbridge's award of damages by the alleged enhanced value of the remaining parcels.

¶10. In *Mississippi State Highway Commission v. Hancock*, the Commission condemned the landowners' property on both sides of Highway 49, to widen it to four lanes. *Mississippi State Highway Commission v. Hancock*, 309 So. 2d 867 (Miss. 1975). The Commission contended that the highway expansion project enhanced the value of the landowners' remaining property. *Id*. at 871. After the taking, the landowners' remaining land, although previously classified by the Commission as farmland, was now also suitable and adaptable for residential property. *Id*. "Thus, [the Commission contended that] the landowners will still have

as much residential property as they had before the taking." *Id*. The Commission sought to set off the value of the enhancement from the value of the land taken. This Court held that:

> The rule in this state is that when a part of a larger tract of land is taken for public use, the owners should be awarded the difference between the fair market value of the whole tract immediately before the taking and the fair market value of the remaining property immediately after the taking, without considering the general benefits or injuries to the use of the taken land. This rule leaves no room for a deduction for any enhancement of the remaining land due to the nature of the facility to be built on the land taken. Furthermore, the landowner is entitled to due compensation not only for the value of the property actually taken, but also for the damages, if any, which may result to the landowner as a consequence of the taking without any deduction therefrom on account of any supposed benefits incident to public use for which the application is made.

*Hancock*, 309 So. 2d at 871 (citing *Pearl River Water Supply Dist. v. Wood*, 172 So. 2d 196 (Miss. 1965)).

¶11. In *Mississippi Transportation Commission v. Bridgforth*, this Court reiterated its previous holding in *Hancock*, that expert appraisers may not seek to set off the value of the enhancement from the value of the land taken. *Miss. Transp. Comm'n v. Bridgforth*, 709 So. 2d 430 (Miss. 1998). In *Bridgforth*, the Commission asserted that the landowners' property in the "after" condition was still suitable for high intensity commercial purposes, although less of the land was available for large-scale development. *Id*. at 440. This Court held that the Commission's argument was essentially the same as in *Hancock*. *Id*. Accordingly, the Court ruled against the Commission. *Id*.at 440-41.

¶12. Unlike the expert appraisers in *Hancock* and *Bridgforth*, Wells gave no testimony stating that the value of the remainder parcels was enhanced by the taking. Wells testified only that smaller parcels are worth more per square foot than larger parcels. This Court has held

6

that size, use, location, topography, and other, like factors determine the value of land in eminent domain proceedings. *Sanderson Farms v. Miss. Highway Comm'n*, 324 So. 2d 243, 244 (Miss. 1975). Additionally, this Court in *Miss. Highway Comm'n v. Harvard*, also held that:

> the fair market value of the remainder of the property following the taking is a matter of common sense [sic] a product of the influence that numerous specifics respecting the taking may have in the market place. Accordingly, witnesses may testify concerning any specific quality, item or change in the property or its attributes, so long as this is ultimately related to the value of the property remaining after the taking.

*Mississippi Highway Commission v. Harvard*, 508 So.2d 1099 at 1101 (citing *Wade Baptist Church v. Miss. Highway Comm'n*, 469 So.2d 1241, 1245 (Miss. 1985)). Wells's testimony that smaller parcels are worth more per square foot was relevant to the issue of the fair market value of the remainder property. Because there is no evidence that Wells testified that the highway expansion project would enhance the value of the remainder property or that he reduced his assessment of compensation by the alleged enhancements, and for the reasons discussed below, Trowbridge's arguments are without merit.

### A. Adjustments for size to the comparable sales

¶13. Wells considered seven comparable sales, with similar qualities to the sale in question, to determine the fair market value of the property. Wells made positive adjustments for size to the comparable sales that involved larger tracts of land than the condemned property. However, in his determination of the value of the remainder property, Wells relied solely upon the comparable sales that were similar in size to the remaining parcels. He did not consider the comparable sales involving larger tracts of land, so he did not make adjustments for size. Trowbridge alleges that the court erred in allowing Wells to make adjustments for size to the comparable sales during his determination of value of the property before the taking, when he did not make any adjustments for size to the comparable sales during his determination of value of the remaining property. According to Trowbridge, Wells's adjustments to the comparable sales used to determine the fair market value of the property before the taking improperly enhanced the fair market value of the remaining parcels. Trowbridge's arguments are without merit.

¶14. Comparable sales must relate to and possess similar qualities to the land involved in the sale. *Miss. Transp. Comm'n v. Fires*, 693 So. 2d 917, 923 (citing *Miss. Highway Comm'n v. Daniel*, 108 So.2d 854 (Miss. 1959)). Moreover, recognizing the difficulty in finding comparable real estate transactions with similar size, location, topography, and other like factors, this Court allows appraisers to make adjustments to comparable sales to determine the value of the subject property in eminent domain proceedings. *See Fires*, 693 So. 2d at 923, *Bridgforth*, 709 So. 2d at 433. Therefore, the trial court did not err in allowing Wells during

8

his determination of value of the remainder property to consider only the comparable sales similar in size to the remaining parcels.

> **B.     Deductions from just compensation for the enhanced value of the remaining property**.

¶15.     In ***Hancock*** and ***Bridgforth***, the Commission's expert appraisers asserted that the value of the remaining property was enhanced by the taking. ***Hancock***, 309 So. 2d at 870. ***Bridgforth***, 709 So. 2d at 440. The expert appraisers also contended that the landowners' damages should be reduced by the enhanced value of the remaining property. ***Hancock***, 309 So. 2d at 870; ***Bridgforth***, 709 So. 2d at 440.  However, in both ***Hancock*** and ***Bridgforth,*** this Court held that expert appraisers may not consider the enhanced value of the remaining property when determining its fair market value. ***Hancock***, 309 So. 2d at 870; ***Bridgforth***, 709 So. 2d at 440.  In this case, the Commission's expert appraiser gave no testimony requesting that Trowbridge's damages be reduced by the enhanced value of the remaining property. Moreover, the judge instructed the jurors not to consider any enhancements conferred on the property by the taking.

¶16.     Despite the lack of evidence to support Trowbridge's claim, it alleges that Wells testified that there were various damages to the remainder property.  Because Wells concluded that the per-acre value of the remainder property was the same before the taking and after the taking, Trowbridge finds error with his assessment of compensation.  Trowbridge asserts that Wells's assessment of compensation did not account for all of the alleged damages to the remainder property.  Trowbridge directs this Court's attention to Wells's testimony and explanation of his opinion as to the value of the remainder property.

Q.      What is that opinion?

A.      It was the same as the value in the before, $4.30.

Q.      And I'd like to point out that although we're talking about the property in the before and the property in the after being two different sizes, the property in the after being a lot smaller than the before, I'm still indicating the same value per square foot; but you have a "different scenario" in the after as you did in the before.

Q.      Mr. Wells, did you take into consideration the change in the access from 51 as opposed to the before and the after?

A.      Yes, I did.

Q.      All right. Now what if any other damage did you determine the landowner were [sic] due?

A.      In the before scenario, we said that this property had frontage of approximately 1100 feet that ran along Hoy Road where any development  could access the availability of utilities — water, electrical, and gas – that were, you know within easement along this right of way.

(Emphasis added).

¶17.    Trowbridge contends that Wells's "different scenario" testimony supports its position that he did not account for all the damages to the remainder property and that he reduced his assessment of damages by the enhanced value of the remaining parcels. However, Trowbridge takes Wells's "different scenario" testimony out of the context in which it occurred. Before giving his assessment of compensation, Wells explained that he relied on comparable sales to determine the fair market value of the property. Wells further explained each comparable sale and the adjustments made to ensure that they were similar to this sale. In each of the

10

comparable sales, Wells made a positive adjustment for the irregular shape of the remaining parcels and the additional cost of development.

¶18.    Wells's testimony regarding the "different scenario" in the before and the after condition of the remaining property relates to the irregular shape of the parcels and the increased development cost.  Although Wells did not agree with Trowbridge regarding the extent of the damages to the remainder property, he made no error in testifying that the fair market value of the remainder property was the same before and after the taking. *Green Acres Mem. Park v. Miss. Highway Comm'n*, 246 Miss. 855, 863, 153 So. 2d 286, 289-90 (1963) (holding that there is no requirement in eminent domain proceedings that an expert appraiser regard the taking as damaging to the remainder).

> II.    **Whether the Trial Court Erred in Allowing the Commission's Expert Appraiser, Terry Wells, to Testify that the Remainder Property is Zoned for General Commercial Development but that the Lesser Included Use Restricted Commercial Development is the Highest and Best Use of the Property.**

¶19.    Trowbridge argues that Wells improperly disregarded the zoning classifications when determining the highest and the best use of the remainder property.  Trowbridge relies on *Dennis v. City Council of Greenville*, 646 So. 2d 1290 (Miss. 1994) and *Mississippi Highway Commission v. Wagley*, 231 So. 2d 507, 509 (Miss. 1970) to support its argument that property must be evaluated under the existing zoning restrictions; therefore, Trowbridge asserts, the trial judge erred in allowing Wells to testify that the highest and best use was a lesser included use of restricted commercial development, when the subject property was zoned for general commercial development.  Trowbridge also argues that Wells did not provide any evidence

11

that a change in zoning was likely to occur, and instead, acted as if the subject property had already been rezoned for restricted commercial development.

¶20. In *Dennis v. City Council of Greenville*, the City's appraiser testified that the highest and best use of the property was for agricultural development, although the zoning classification for the property was for residential development. *Dennis v. City Council of Greenville*, 646 So. 2d 1290, 1291 (Miss. 1994). In *Dennis*, this Court reiterated its holding in *Mississippi Highway Commission v. Wagley* that property in eminent domain proceedings must be evaluated in accordance with the restrictions of existing zoning classifications, and that consideration must be given to the impact potential zoning changes may have on the fair market value of the subject property. *Dennis*, 646 So. 2d at 1294 (citing *Wagley*, 231 So. 2d 507, 509 (Miss. 1970)). This Court further held that the trial judge disregarded the existing zoning restrictions. *Id*. The City's appraiser evaluated the land under the restrictions of agricultural development, although the property was zoned for residential development. *Id*. This Court concluded that even if there was a potential change of the zoning classification of the landowners' property from residential to agricultural development, the City's appraiser evaluated the property as if the rezoning had already occurred, when no such changed had occurred. *Id*.

¶21. Clearly, this is not the same factual situation as the present case. Trowbridge's reliance on *Dennis* is misplaced for two reasons. First, in contrast to *Dennis,* the Commission's expert appraiser, Wells, did *not* conclude that the highest and best use of the property was a *potential use not allowed by the existing zoning restrictions*. Instead, Wells opined that, although the property was zoned for C-2 general commercial development, the highest and best use of

12

property was for C-1 restricted commercial development, a lesser included use of property zoned for general commercial development.

¶22.    Second, unlike this case, the trial court in ***Dennis*** refused to consider the valuation of the landowner's appraisers. ***Dennis***, 646 So. 2d at 1293.   The Court stated:

> [T]he trial court, by not allowing the landowners to put the testimony of expert appraisers into evidence regarding sales of lots for single-family residences, thereby prevented the landowners from substantiating their valuation and appraisals with comparables. Consequently, the landowners' evidence, which would have provided an alternative valuation for consideration and which may have refuted the City's valuation testimony which was supported by comparables of distant agricultural sales, was excluded from evidence by the trial judge.

*Id.*   In the present case, the testimony of Trowbridge's expert appraiser that the best use of the subject property was retail commercial use was *allowed*.   Therefore, valuations by both parties' expert appraisers were admitted to be considered by the jurors in reaching their decision.

¶23.    Further, this Court's discussion of expert valuation testimony in ***Potters II v. State Highway Comm'n*** is particularly relevant to Mr. Well's testimony in this case. ***Potters II v. State Highway Commission***,  608 So. 2d 1227, 1233 (Miss. 1992)   The Court in ***Potters II*** stated:

> Oftentimes parties to eminent domain proceedings proceed within broad, general use categories and talk of commercial use and residential use and the like. *See, e.g.*, ***Howell v. State Highway Commission of Mississippi***, 573 So. 2d 754, 755 (Miss. 1990); ***Dykes v. State Highway Commission of Mississippi***, 535 So. 2d 1349, 1351 (Miss. 1988). On other occasions, *not inappropriately,* these broad categories are narrowed so that a highest and best use for a given property may be for multi-family residences as distinguished from single-family dwellings, *see, e.g.*, ***Hudspeth v. State Highway Commission of Mississippi,*** 534 So. 2d 210, 211 (Miss. 1988). Within commercial properties, there are many uses of

13

differing values. *Franklin County Timber* talks of sawmilling as the most profitable use. We think it fair on the present facts that expert valuation testimony may assume the highest and best use of subject property was as a fast food restaurant. We say this notwithstanding that MSHC Appraiser Pritchard limited himself to the broader characterization: commercial. *Obviously, the extent to which the categories are narrowed is a matter of professional judgment and, within limits, experts may give their opinion regarding the appropriate level of specificity*. (Emphasis added).

*Id.* Accordingly, we find that Well's testimony that a lesser included use of the existing zoning restrictions was the highest and best use of property for purposes of valuation was permissible. Because Wells evaluated the subject property in accordance with the legal parameters of the existing zoning restrictions, there was no requirement that any consideration should have been given to potential zoning changes.

**CONCLUSION**

¶24. The trial court did not err in denying Trowbridge's motion to strike the testimony of Wells, the Commission's expert appraiser. Where the testimony of the expert appraisers is competent and relevant, the jury has the responsibility of considering the weight and credibility of their testimony. *Hancock*, 309 So. 2d at 870. Wells is a competent expert appraiser, and his testimony regarding the fair market value of the property was relevant to the issue of just compensation. The jury evaluated the weight and credibility of Wells's testimony and returned a verdict in favor of Trowbridge in the amount of $1,108,941. This Court has a long-standing history of not disturbing jury verdicts in eminent domain proceedings, especially when the jury has viewed the property being taken and the evidence in the record supports the jury's finding. *Miss. Highway Comm'n v. Harvard*, 508 So.2d 1099, 1105 (Miss 1987) (citing *Miss. Highway Comm'n v. Franklin County Timber Co., Inc*., 488 So. 2d 782, 787 (Miss.1986)).

14

Since the jury had the opportunity to view the property, and its findings are supported by the record, this Court affirms the judgment of the trial court.

¶25.    **AFFIRMED**.

**WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., CONCURS IN RESULT ONLY.  COBB, P.J., AND GRAVES, J., NOT PARTICIPATING.**