KITCHENS, Justice,
dissenting:
¶ 13. I do not agree that the trial court abused its discretion in allowing Pitre’s expert, James Hamilton, to testify, and I would affirm the jury verdict in favor of Pitre, based in part on this Court’s “longstanding history of not disturbing jury verdicts in eminent domain proceedings.” Trowbridge Partners, L.P. v. Miss. Transp. Comm’n, 954 So.2d 935, 944 (Miss.2007).
¶ 14. At the time of trial, Hamilton, Pitre’s designated expert, had lived in Vicksburg for seventy-six years and had worked in the real estate business since 1954. He obtained his broker’s license in 1967 and his license to appraise both residential and commercial properties in the early 1990s. Hamilton testified concerning numerous professional accomplishments over a long career in real estate and, quite correctly, was accepted as an expert witness by the trial court. Notably, he had testified as an expert witness in at least forty eminent domain cases.
¶ 15. With regard to his testimony, Hamilton used comparable sales to establish the fair market value of Pitre’s property and determined that the 115-acre parcel was worth $5,000 per acre before the taking, an amount $1,000 per acre less than the fair market value established by Gulf South’s expert appraiser. However, Hamilton was unable to find a suitable comparable sale by which to measure the diminution in value of Pitre’s remainder. Clearly, this was due to the unique characteristics of the property at the time of the appraisal. To that end, Hamilton testified,
We can find land [comparable sales] when we go out just about anytime. We can find house [comparable sales] about anywhere. But you find houses with land with gas lines and pipelines on it and find sales of that type of property, that’s kind of hard to do.... If I could have found any, I would have.
Notwithstanding this uncontradicted testimony before the jury, the majority notes that Hamilton’s assertion that no comparable sales existed defies judicial knowledge. Maj. Op. at ¶ 9. However, when an expert witness’s testimony defies judicial knowledge, which falls far short of omniscience, our inclination should be to defer to the testimony of a qualified expert, rather than disregard it altogether. To be sure, the court’s need for, .and reliance on, expert witnesses is rooted in the reality that expert analysis and opinion usually exceed the knowledge and understanding of technical subject matter that is reposed in the minds of mere jurists and jurors.
¶ 16. Here, neither expert presented evidence of comparable sales to the jury to undergird their opinions regarding diminution of value of the parcel. Gulf South’s expert testified that the diminution in the value of the land was zero, and Pitre’s expert testified that the diminution in the value of the land amounted to 15% for the remainder of the parcel not taken by eminent domain, 20% for the house, and 30% *501 for the barn, the barn being nearer the pipeline than the house. Hamilton testified that his opinion was based on his expertise, training, and certification in the field of real estate appraisal, and that “[j]ust about everything [appraisers] do is the opinion of the appraiser.”
¶ 17. It is not for this Court to establish, by judicial fiat, the “standards ... accepted in determining fair market value for real property.” Maj. Op. at ¶ 6. We should not be in the business of dictating methodology to real estate appraisers, or to experts in any other field. It is they, and not we, who are the experts in then-respective disciplines. The fact that neither party’s expert based his opinion on comparable sales is telling. Such information is not always available, and when it is not, as here, qualified appraisers, such as these, may resort to other appropriate and accepted methodology, including, but not necessarily limited to, their professional judgment, born of experience.[8]
¶ 18. I would hold that the evidence presented by both experts was both reliable and relevant, and that it was the prerogative of the jury to weigh their relative credibility and the validity of their opinions. That was done here, and the jury, having heard and considered the testimony of both experts, concluded that Pi-tre was entitled to $175,000 for the taking of his land. Accordingly, I would affirm.
GRAVES, P.J., JOINS THIS OPINION.

. The "statutorily-authorized” standard mentioned by the majority and by this Court in Rebelwood, Ltd. v. Hinds County, 544 So.2d 1356, 1360 (Miss.1989), is used by the State to determine the "true value” of a parcel for the sole purpose of assessing ad valorem taxes. Miss.Code Ann. § 27-35-50 (Rev.2006). Real estate appraisers in eminent domain cases, or otherwise, are not statutorily mandated to adhere to this method of appraisal. Id.